**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **JEFFREY MADISON, RYAN DOWNTON,** | § | |
| **PEGGY BORGFELD, KEVIN OWENS, JEFF** | § | |
| **AND ASHLEY MADISON TRUST, and** | § | |
| **KEVIN J. OWENS MANAGEMENT TRUST,** | § | |
| | § | |
| **Plaintiffs,** | § | **Case No. 6:20-CV-835-ADA** |
| | § | |
| *v.* | § | |
| | § | |
| **HEALTH CARE SERVICE** | § | |
| **CORPORATION, d/b/a BLUE CROSS AND** | § | **JURY DEMAND** |
| **BLUE SHIELD OF TEXAS,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

**MOTION OF BLUE CROSS AND BLUE SHIELD OF TEXAS
TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Health Care Service Corporation, a Mutual Legal Reserve Company, d/b/a Blue Cross and

Blue Shield of Texas ("BCBSTX"), moves the Court to dismiss the First Amended Complaint

[Dkt. No. 32] filed by plaintiffs Jeffrey Madison, Ryan Downton, Peggy Borgfeld, and Kevin

Owens (collectively, "Individual Plaintiffs"), and the Jeff and Ashley Madison Trust and the Kevin

J. Owens Management Trust (collectively, "Trust Plaintiffs" and, collectively with Individual

Plaintiffs, "Plaintiffs") in its entirety with prejudice.

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................1

    A.    The Plaintiffs....................................................................................................2

    B.    The Lab Billing Dispute. ..................................................................................2

    C.    Arbitration of Little River's Lab Billing Dispute. ...........................................5

    D.    Current Related Proceedings in Bankruptcy Court...........................................7

LEGAL STANDARD......................................................................................................7

ARGUMENT ..................................................................................................................8

I.      THE COURT SHOULD DISMISS THE COMPLAINT IN ITS ENTIRETY BASED ON PRINCIPLES OF BANKRUPTCY LAW AND RES JUDICATA ...................................8

    A.    Plaintiffs Lack the Capacity to Sue Based on Harms Suffered by Little River Under Bankruptcy Principles and Texas Law. ..........................................................8

          1.    Plaintiffs' Lack Legal Capacity to Bring Their Claims Because They Belong to the Bankruptcy Estate...........................................................................8

          2.    Texas Law Bars Corporate Owners from Suing on Behalf of the Corporation. .9

    B.    Plaintiffs' Claims Are Barred By Res Judicata. .............................................11

II.    PLAINTIFFS HAVE NOT ADEQUATELY PLEADED ANY OF THEIR CLAIMS ....13

    A.    The Lanham Act and Unfair Competition Claims (Counts 1 and 5). ............13

    B.    Defamation Claim (Count 2). .........................................................................15

    C.    Business Disparagement Claim (Count 3)......................................................17

    D.    Tortious Interference with Prospective Business Relations Claim (Count 4). ..............17

    E.    Civil RICO Claim (Count 8)...........................................................................19

          1.    Plaintiffs fail to adequately allege any predicate acts. ......................19

               a.    Wire Fraud .......................................................................................19

               b.    Extortion..........................................................................................20

               c.    Corrupt Influence ............................................................................21

          2.    Plaintiffs fail to allege a RICO enterprise. .......................................22

          3.    Plaintiffs fail to allege proximate cause. ...........................................22

    F.    The Antitrust Claims (Counts 7 and 8)..........................................................24

          1.    Plaintiffs Lack Standing to Bring Their Antitrust Claims.................24

          2.    Plaintiffs' Antitrust Claims Are Factually Deficient.........................26

    G.    Intentional Infliction of Emotional Distress (IIED) (Count 9). .....................29

    H.    Exemplary Damages (Count 10)....................................................................30

CONCLUSION..............................................................................................................30

# TABLE OF AUTHORITIES

**Cases**                                                                        **Page(s)**

*Allstate Ins. Co. v. Benhamou,*
190 F. Supp. 3d 631 (S.D. Tex. 2016) ............................................................20, 22

*Anza v. Ideal Steel Supply Corp.,*
547 U.S. 451 (2006)........................................................................................22, 23

*Apani Sw., Inc. v. Coca-Cola Enters., Inc.,*
300 F.3d 620 (5th Cir. 2002) ......................................................................24, 28, 29

*Arruda v. Curves Int'l, Inc.,*
6:20-CV-00092-ADA, 2020 WL 4289380
(W.D. Tex. July 27, 2020), *aff'd,*
2021 WL 2654533 (5th Cir. June 28, 2021). .........................................................20

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)................................................................................................7

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)......................................................................................8, 26, 27

*Bradford v. Vento,*
48 S.W.3d 749 (Tex. 2001).......................................................................18, 29, 30

*Bridge v. Phoenix Bond & Indem. Co.,*
553 U.S. 639 (2008)..............................................................................................19

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.,*
509 U.S. 209 (1993)..............................................................................................25

*Brunig v. Clark,*
560 F.3d 292 (5th Cir. 2009) ...............................................................................22

*Matter of Buccaneer Res., L.L.C.,*
912 F.3d 291 (5th Cir. 2019) .................................................................................9

*Cantu v. Moody,*
933 F.3d 414 (5th Cir. 2019),
*cert. denied,* 141 S. Ct. 112 (2020)........................................................................8

*Coinmach Corp. v. Aspenwood Apartment Corp.,*
417 S.W.3d 909 (Tex. 2013)................................................................................18

*Collins v. Morgan Stanley Dean Witter,*
224 F.3d 496 (5th Cir. 2000) ..................................................................................3

*Creditwatch, Inc. v. Jackson*,
    157 S.W.3d 814 (Tex. 2005) ................................................................29

*Derrick Mfg. Corp. v. Sw. Wire Cloth, Inc.*,
    934 F. Supp. 796 (S.D. Tex. 1996) ........................................................14

*Drier v. Tarpon Oil Co.*,
    522 F.2d 199 (5th Cir. 1975) .................................................................12

*Edmiston v. La. Small Bus. Dev. Ctr.*,
    931 F.3d 403 (5th Cir. 2019) ...................................................................7

*Elliot v. Foufas*,
    867 F.2d 877 (5th Cir. 1989) .................................................................19

*Fowler v. Montis*,
    No. 13-13-00581-CV, 2014 WL 6602288
    (Tex. App.—Corpus Christi Nov. 20, 2014, no pet.) ............................9, 10

*GTA Sw., Inc. v. Bruce*,
    998 S.W.2d 605 (Tex. 1999) .................................................................30

*Hall v. Hodgkins*,
    305 F. App'x 224 (5th Cir. 2008) ......................................................2, 12

*Harold H. Huggins Realty, Inc. v. FNC, Inc.*,
    634 F.3d 787 (5th Cir. 2011) .................................................................10

*Haygood v. Chandler*,
    No. 12-02-00239-CV, 2003 WL 22480560
    (Tex. App.—Tyler Oct. 31, 2003, pet. denied) .......................................30

*Hemi Grp., LLC v. City of New York, NY*,
    559 U.S. 1 (2010) .......................................................................22, 23, 24

*Holmes v. Secs. Investor Protection Corp.*,
    503 U.S. 258 (1992) ..............................................................................23

*Huckabee v. Time Warner Entm't Co.*,
    19 S.W.3d 413 (Tex. 2000) ...................................................................16

*Hughes v. Tobacco Inst., Inc.*,
    278 F.3d 417 (5th Cir. 2001) .................................................................26

*La. World Exposition v. Fed. Ins. Co.*,
    858 F.2d 233 (5th Cir. 1988) ...................................................................8

*Labaty v. UWT, Inc.*,
   121 F. Supp. 3d 721 (W.D. Tex. 2015)..................................................19

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014)..............................................................13, 14

*In re Lipsky*,
   460 S.W.3d 579 (Tex. 2015) (orig. proceeding)....................................16

*Louis v. Mobil Chem. Co.*,
   254 S.W.3d 602 (Tex. App.—Beaumont 2008, pet. denied)......................30

*Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*,
   751 F.3d 368 (5th Cir. 2014) ...........................................................26

*McPeters v. Edwards*,
   806 F. Supp. 2d 978 (S.D. Tex. 2011),
   *aff'd*, 464 F. App'x 351 (5th Cir. 2012)..............................................20

*Meyers v. Textron, Inc.*,
   540 F. App'x 408 (5th Cir. 2013) .....................................................11

*MWK Recruiting, Inc. v. Jowers*,
   1:18-CV-444-RP, 2020 WL 7229977
   (W.D. Tex. Dec. 8, 2020).................................................................20

*Nath v. Tex. Children's Hosp.*,
   446 S.W.3d 355 (Tex. 2014)............................................................17

*Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*,
   512 F.3d 137 (5th Cir. 2007) ...........................................................17

*Newspapers, Inc. v. Matthews*,
   339 S.W.2d 890 (Tex. 1960)........................................................16, 17

*Norris v. Hearst Tr.*,
   500 F.3d 454 (5th Cir. 2007) ......................................................24, 25

*OGD Equip. Co. v. Overhead Door Corp.*,
   4:17-CV-00898-ALM-KPJ, 2019 WL 5390589
   (E.D. Tex. July 15, 2019).................................................................14

*Oreck Direct, LLC v. Dyson, Inc.*,
   560 F.3d 398 (5th Cir. 2009) ...........................................................11

*Overtime Mktg. SE, LLC v. Beverage*,
   No. 4:14-CV-434, 2015 WL 430248
   (E.D. Tex. Feb. 2, 2015) .................................................................10

*In re Paige,*
610 F.3d 865 (5th Cir. 2010) ............................................................................12

*Pike v. Tex. EMC Mgmt., LLC,*
610 S.W.3d 763 (Tex. 2020)...........................................................................9, 10

*Pizza Hut v. Papa Johns, Int'l, Inc.,*
227 F.3d 489 (5th Cir. 2000) ............................................................................15

*PSKS, Inc. v. Leegin Creative Leather Prods., Inc.,*
615 F.3d 412 (5th Cir. 2010) ............................................................................29

*R2 Invs. LDC v. Philips,*
401 F.3d 638 (5th Cir. 2005) ..............................................................................8

*Matter of S.I. Acquisition,*
817 F.2d 1142 (5th Cir. 1987) .........................................................................8, 9

*In re SBMC Healthcare, LLC,*
519 B.R. 172 (Bankr. S.D. Tex 2014),
*aff'd*, No. AP-14013126, 2017 WL 2062992
(S.D. Tex. May 11, 2017) ..................................................................................10

*In re Seven Seas Petroleum,*
522 F.3d 575 (5th Cir. 2008) ..............................................................................8

*Seven-Up Co. v. Coca-Cola Co.,*
86 F.3d 1379 (5th Cir. 1996) ............................................................................15

*Shah v. VHS San Antonio Parts., L.L.C.,*
985 F.3d 450 (5th Cir. 2021) ............................................................................28

*Siddiqui v. Fancy Bites, LLC,*
504 S.W.3d 349 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) ................10

*In re Southmark Corp.,*
163 F.3d 925 (5th Cir. 1999) ............................................................................12

*St. Germain v. Howard,*
556 F.3d 261 (5th Cir. 2009) (per curiam)........................................................20

*St. Paul Mercury Ins. Co. v. Williamson,*
224 F.3d 425 (5th Cir. 1995) ............................................................................22

*Superior MRI Servs., Inc. v. All. HealthCare Servs., Inc.,*
778 F.3d 502 (5th Cir. 2015) ............................................................................14

iv

*Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*,
   975 F.2d 1134 (5th Cir. 1992) ...............................................................................19, 20

*Test Masters Educ. Servs., Inc. v. Singh*,
   428 F.3d 559 (5th Cir. 2005), *abrogated on other grounds by*
   *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23 (2001) ............................11, 12, 13

*Tex. Farm Bureau Mut. Ins. Cos. v. Sears*,
   84 S.W.3d 604 (Tex. 2002) ..........................................................................................30

*Transamerica Mortg. Advisors, Inc. v. Lewis*,
   444 U.S. 11 (1979) .........................................................................................................9

*United States v. Richardson*,
   676 F.3d 491 (5th Cir. 2012) ........................................................................................22

*United States v. Stephens*,
   964 F.2d 424 (5th Cir. 1992) ........................................................................................20

*Varela v. Gonzales*,
   773 F.3d 704 (5th Cir. 2014) ........................................................................................24

*Vice v. Kasprzak*,
   318 S.W.3d 1 (Tex. App.—Houston [1st Dist.] 2009, pet. denied)..................................16, 17

*Velocity Databank, Inc. v. Shell Offshore, Inc.*,
   456 S.W.3d 605 (Tex. App.—Houston [1st Dist.] 2014, pet. denied)....................................15

*Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*,
   434 S.W.3d 142 (Tex. 2014)...........................................................................................16, 17

*WFAA-TV, Inc. v. McLemore*,
   978 S.W.2d 568 (Tex. 1998)...........................................................................................16

*Wingate v. Hajdik*,
   795 S.W.2d 717 (Tex. 1990),
   *superseded by statute on other grounds*,
   *Sneed v. Webre*, 465 S.W.3d 169 (Tex. 2015) .......................................................................11

*Zurita v. Lombana*,
   322 S.W.3d 463 (Tex.App.—Houston [14th Dist.] 2010, pet. denied) ...................................29

## Statutes/Rules

11 U.S.C. § 541.............................................................................................................8

15 U.S.C. § 1125............................................................................................................13, 15

18 U.S.C. § 1343 ..........................................................................................................19

18 U.S.C. § 1503 ................................................................................................19, 21, 22

18 U.S.C. § 1951 ............................................................................................19, 20, 21

18 U.S.C. § 1961 ..........................................................................................................19

18 U.S.C. § 1964 ..........................................................................................................22

Tex. Civ. Prac. & Rem. Code § 16.002 (a) ..........................................................15, 29

Fed. R. Civ. P. 9 ..........................................................................................................19

Fed. R. Civ. P. 12(b) .................................................................................... *passim*

## INTRODUCTION

This case centers on the failure of a rural hospital in central Texas, Rockdale Blackhawk, LLC, d/b/a Little River Healthcare ("Little River").  Little River, which is now in bankruptcy, has twice sued BCBSTX to recover for the same injuries caused by the same alleged conduct alleged by the plaintiffs in this case, who are the former officers and current indirect equity owners of Little River.  In contravention of federal and state law, Plaintiffs seek to reframe the harms that allegedly led to Little River's demise as injuries to themselves.  But as the First Amended Complaint makes clear, the claims in this lawsuit—factually deficient and legally infirm in their own right—belong solely to Little River, not to the Plaintiffs.  Indeed, Little River ***previously brought claims based on these same alleged harms*** in a now-resolved binding arbitration before a former justice of the Texas Supreme Court, and the bankruptcy trustee is currently pursuing additional claims against BCBSTX in an adversary proceeding.  This case is a poorly-disguised attempt to usurp claims for alleged harms to Little River that belong only to Little River, that have previously been resolved in an arbitration in BCBSTX's favor, and for which the Trustee is already seeking his own second bite at the apple.  Plaintiffs are not entitled to a third bite at the apple here.

As explained below, all of Plaintiffs' claims are based on several threshold deficiencies: (1) Plaintiffs lack capacity to assert their claims, which belong exclusively to the bankruptcy estate of Little River; and (2) Plaintiffs' claims are barred by *res judicata* based on the prior arbitration. *See* Argument §I, *infra.*  Moreover, most of Plaintiffs' claims are time-barred, and none is sufficiently pled to state a cause of action.  *See* Argument §II, *infra*.  For the reasons set forth below, the Court should dismiss the First Amended Complaint with prejudice.

1

## BACKGROUND[1]

### A.    The Plaintiffs.

The Individual Plaintiffs (Jeffrey Madison, Ryan Downton, Peggy Borgfeld, and Kevin Owens) are former executive officers of Little River—a rural hospital which is currently in Chapter 7 bankruptcy in the United States Bankruptcy Court for the Western District of Texas (the "Bankruptcy Court").  First Am. Compl. ¶¶ 1–4.  The Individual Plaintiffs and the Trust Plaintiffs with which they are associated are also, indirectly, equity stakeholders in Little River. Specifically, Plaintiffs own membership interests in Compass Pointe Holdings, LLC, which in turn owns 100% of Little River Healthcare Holdings, LLC, which in turn owns 100% of Little River. *See id.*[2]  In sum, Plaintiffs here were at one time members of a now bankrupt entity (Compass Pointe) that was itself a member of another now-bankrupt entity (Little River Healthcare Holdings) that in turn was a member of the LLC that operated as Little River, currently the subject of a Chapter 7 liquidation.

### B.    The Lab Billing Dispute.

In 2003 and 2004, BCBSTX entered into contracts with Little River governing BCBSTX's payment to Little River for services rendered to BCBSTX members.  *See* Compl. [Dkt. No. 1] Ex. A (the "Final Award") ¶ 13.  Between 2013 and 2015, Little River experienced a period of growth significantly fueled by its expansion in laboratory services.  First Am. Compl. ¶¶ 12, 26.  Little River's expansion coincided with "widespread billing concerns" in the healthcare industry "about potential fraudulent billing" by laboratories used by rural hospitals.  Final Award ¶ 130.  BCBSTX

---

[1] The allegations in the First Amended Complaint are accepted as true solely for purposes of this Motion to Dismiss. *See Hall v. Hodgkins*, 305 F. App'x 224, 227 (5th Cir. 2008).

[2] Individual Plaintiffs Borgfeld and Downton claim to hold direct ownership interests in Compass Pointe Holdings. Individual Plaintiffs Madison and Owens appear to allege that they have interests in Plaintiff Madison Trust and Owens Management Trust, which in turn hold ownership interests in Compass Pointe Holdings.  First Am. Compl. ¶¶ 1–4.

investigated Little River as a result of Little River's massive laboratory billing expansion.  First Am. Compl. ¶ 26.

Plaintiffs complain of several actions taken by BCBSTX in connection with this investigation, as well as nebulous actions related to a purported "cabal" made up of BCBSTX, the Blue Cross & Blue Shield Association ("BCBSA"), various BCBSA licensees ("Licensees"), and other non-BCBS-licensed health insurance companies.  First, non-party BCBSA submitted a case notification to the Office of Personnel Management Office of the Inspector General ("OPM-OIG"), dated June 9, 2016 ("Case Notification"), notifying it that BCBSTX had opened an investigation of Little River based on third-party reports of potential fraud.  *Id.* ¶ 28.  The Case Notification stated that "[t]he Preliminary Investigation is predicated by several Fraud Hotline reports and a [National Anti-Fraud Department] complaint regarding a facility named Rockdale Blackhawk dba Little River Healthcare[.] . . . The complainants received explanation of benefit forms for excessive and expensive lab testing from [Little River] but had never been to [Little River]."  [Dkt. No. 24].[3]

Second, in July 2017 BCBSTX personnel in its Special Investigations Department also delivered a presentation to the Healthcare Fraud Prevention Partnership ("HFPP") on trends in rural hospital laboratory billing.  First Am. Compl. ¶ 35; *see also* [Dkt. No. 24-1].  The HFPP is a public-private partnership administered by the Department of Justice and Department of Health and Human Services, comprised of federal, state and local government agencies, law enforcement, private health insurance entities, and health care anti-fraud associations.  *See* The Healthcare Fraud Prevention Partnership, About the Partnership, available at http://www.cms.gov/hfpp/about.  Though the presentation contains no specific statements regarding Little River, Little River was

---

[3] The Case Notification [Dkt. No. 24], HFPP presentation [Dkt. No. 24-1], and email forwarding the same to United [Dkt. No. 24-2] discussed below, were filed under seal by a Court order dated February 17, 2021 and can be relied on in support of this motion to dismiss because "they are referred to in the plaintiff's complaint and are central to [its] claim[s]."  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000).

one of 10 hospitals referenced in the slide deck.  After the presentation, an employee of BCBSTX forwarded the presentation materials to an employee of UnitedHealthcare, an HFPP participant, who had requested a copy of the presentation.  *See* First Am. Compl. ¶ 67; *see also* [Dkt. No. 24-2].

Third, Plaintiffs allege BCBSTX sent unidentified communications to the Centers for Medicare and Medicaid Services ("CMS"), members of the Texas Legislature, and employees of the Texas Department of Insurance, in which Plaintiffs contend BCBSTX accused Little River of fraud.[4]   First Am. Compl. ¶ 35.   Plaintiffs contend these unidentified reports were part of BCBSTX's "pressure tactics to avoid payment obligations," *id*. ¶ 22, a dubious claim since BCBSTX had the right to simply cancel its contract with Little River at any time.  Final Award ¶ 20 (noting that under the contracts between Little River and BCBSTX "either party could terminate the contract at any time without cause upon 90-days written notice").  These incidents were purportedly part of a coordinated "smear campaign" against Little River specifically and rural hospitals generally.  *See* First Am. Compl. ¶¶ 15, 17–25.  The goal of this alleged smear campaign was to force Little River and Plaintiffs out of business to "increase market share for [BCBSTX's] preferred [laboratory services] provider, Quest."  *Id.* ¶ 61.

Finally, Plaintiffs allege BCBSTX was a member of an industry-wide "cabal" dedicated to "avoid[ing] contractual obligations to [rural hospitals]."  *Id.* ¶ 38.  According to Plaintiffs, as rural hospitals "started outreach laboratory programs and/or increased the volume of their outreach laboratory work," *id.* ¶ 37, BCBSTX engaged in a series of actions to amend its contracts with

---

[4] Plaintiffs also decry BCBSTX for "implying wrongful actions by Plaintiffs" in a statement made by a BCBSTX employee to a newspaper.  First Am. Compl. ¶ 35.  This statement, reproduced in a newspaper article cited to in the First Amended Complaint, affirms BCBSTX's commitment to providing its members with high quality, cost-effective healthcare and innocuously declines to comment further on the then-ongoing investigation into Little River's billing practices.  *See* Will Johnson, Blue Cross Issues Statement Regarding LRH Allegations, available at http://messenger-news.com/2017/06/28/2blue-cross-issues-statement-regarding-lrh-allegations/.

rural hospitals and "encouraged" other insurers to do the same.  For instance, Plaintiffs contend BCBSTX "conspir[ed] to wrongfully deny Little River['s] laboratory claims through emails with employees of other insurance companies" and "[e]mail[ed] other insurers encouraging them to investigate Little River and other hospitals based on false allegations of fraud" related to the hospitals' laboratory billing practices.  *Id.* ¶ 51.

## C.    Arbitration of Little River's Lab Billing Dispute.

Little River and BCBSTX engaged in a two-week arbitration hearing in August 2019 (the "Arbitration") about these billing disputes, presided over by a single arbitrator (the "Tribunal"). First Am. Compl. ¶ 16.  A Final Award was issued on May 6, 2020, which was subsequently confirmed and reduced to a final judgment.  *See* Final Award; *see also Rockdale Blackhawk, LLC v. Health Care Service Corp. d/b/a Blue Cross & Blue Shield of Tex.*, Docket No. 6:20-ap-06006 (Bankr. W.D. Tex. 2020), Dkt. No. 9 (confirming the Final Award and entering judgment).

Little River asserted 13 counts against BCBSTX under various breach of contract, statutory, common law, and tort theories, including fraudulent inducement and violations of the Texas Free Enterprise and Antitrust Act ("TFEAA").

Little River's fraudulent inducement claim in the Arbitration was based in part on "improper accusations of fraudulent billing practices to CMS" and others.  *Id.* ¶¶ 35, 130.  These communications were discussed in the Final Award: "According to Little River, BCBSTX exerted financial pressure on Little River to force its acceptance of the New Contracts by cutting off its cash flow through pre-payment review and ***making false reports to the OIG***."  *Id.* ¶ 124 (emphasis added); *see also id.* ¶¶ 35, 128.  The Tribunal found for BCBSTX on the merits of this claim, concluding there was insufficient evidence "to establish that BCBSTX's Case-Notification to the OIG accusing Little River of fraud was mere pretext, though BCBSTX was less than forthright by

failing to convey Little River's explanation of its billing practices and [Little River's] belief that they were fully compliant with CMS regulations." *Id.* ¶ 130. The Final Award also provided that "[i]n light of widespread concerns in the industry at the time about potential fraudulent laboratory billing, BCBSTX's investigation into Little River's billing practices was not unjustified in light of the dramatic increase in the volume of Little River's laboratory testing. BCBSTX's report to the OIG is no evidence that it did not intend to comply with the New Contracts at the time they were negotiated." *Id.* The Tribunal added that "the parties had a genuine disagreement over whether Little River's laboratory billing practices were permissible." *Id.* ¶ 131.

The Final Award similarly addressed the HFPP presentation. The Tribunal observed that Little River's TFEAA claim was based on BCBSTX and other third-party payors engaging in a purported "price-fixing" scheme by "impos[ing] coordinated restrictions on hospitals' use of reference labs." *Id.* ¶ 33. The ultimate goal of this scheme, according to Little River, was to "disincentivize Little River's provision of laboratory services *so that those services would be diverted to BCBSTX's lower cost contractor (Quest)*." *Id.* ¶ 121 (emphasis added). The Tribunal described Little River's TFEAA claim as follows:

> Little River points to an external presentation BCBSTX made in July of 2017 to representatives of other third-party payors, such as Aetna, Cigna, Humana and United, *directing them to target rural hospitals and move them from POC contracts to less-expensive standardized fee schedules*, and to prohibit rural hospitals' use of reference labs. . . . Little River contends BCBSTX later shared the presentation with United Healthcare, which thereafter followed through on the scheme by demanding from Little River a lower fee-based schedule for laboratory services.

*Id.* (emphasis added). The Tribunal entered judgment in favor of BCBSTX on this claim, concluding that Little River lacked had failed to prove any antitrust injury, *i.e.*, "decreased consumer choice or quality" or "increased consumer prices." *Id.* ¶ 122.

6

The Tribunal entered judgment in BCBSTX's favor on all of Little River's other non-contract claims seeking damages for lost-enterprise value and other injuries allegedly caused by BCBSTX's investigation and alleged reporting on Little River's laboratory billing scheme.  *Id.* ¶¶ 123–31, 143–48.

## D.    Current Related Proceedings in Bankruptcy Court

Little River's Bankruptcy Trustee has sued the Individual Plaintiffs for siphoning off Little River's assets in a series of fraudulent transfers and other fiduciary breaches contributing to Little River's financial demise.  *See Studensky, et al. v. Borgfeld, et al.*, Adv. Proc. No. 20-6062 (Bankr. W.D. Tex.).[5]

In addition, the Trustee – clearly displeased with the outcome in the Arbitration – has filed an adversary proceeding against BCBSTX, which is currently pending.  *Studensky v. Blue Cross & Blue Shield of Tex.*, Adv. Proc. No. 20-6095 (Bankr. W.D. Tex.).  The Trustee has asserted claims against BCBSTX for business disparagement, civil conspiracy, abuse of process, tortious interference with existing contracts, tortious interference with prospective contracts, and unfair competition alleging, like Plaintiffs here, a "smear campaign against Little River that . . . caused its ultimate demise."  First Am. Adv. Compl. ¶ 5.  These claims overlap significantly with the claims in this action.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face."  *Edmiston v. La. Small Bus. Dev. Ctr.*, 931 F.3d 403, 406 (5th Cir. 2019).  Facts that are "merely consistent with" liability are insufficient, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and legal conclusions or conclusory allegations are insufficient

---

[5] On May 4, 2021, this Court withdrew the reference to the Bankruptcy Court.  *See Studensky v. Borgfeld, et al*. No. 6:21-MC-00028-ADA, Dkt. No. 3.

to withstand Rule 12(b)(6) scrutiny.  *Cantu v. Moody*, 933 F.3d 414, 420 (5th Cir. 2019), *cert. denied*, 141 S. Ct. 112 (2020); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Courts do not "strain to find inferences favorable" to plaintiffs when evaluating whether a plaintiff has stated a claim.  *R2 Invs. LDC v. Philips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted).

## ARGUMENT

I. **THE COURT SHOULD DISMISS THE COMPLAINT IN ITS ENTIRETY BASED ON PRINCIPLES OF BANKRUPTCY LAW AND RES JUDICATA**

    A. **Plaintiffs Lack the Capacity to Sue Based on Harms Suffered by Little River Under Bankruptcy Principles and Texas Law.**

        1. **Plaintiffs' Lack Legal Capacity to Bring Their Claims Because They Belong to the Bankruptcy Estate.**

As evidenced by the prior Arbitration and the ongoing parallel proceedings in the bankruptcy court, the Trustee is the exclusive party authorized to bring the claims at issue in this case, and thus all but one of Plaintiffs' claims—that for intentional infliction of emotional distress[6]—should be dismissed in their entirety under Rule 12(b)(6) for failure to state a claim. The First Amended Complaint alleges harms to Little River, based on BCBSTX's alleged actions directed toward Little River.  Under 11 U.S.C. § 541(a)(1), a bankruptcy estate's property includes "all legal or equitable interests of the debtor in property as of the commencement of the case." Because "legal and equitable interests" include legal claims, where a claim alleges direct harm to the debtor, that claim belongs to the estate.  *See, e.g.*, *La. World Exposition v. Fed. Ins. Co.*, 858 F.2d 233, 245 (5th Cir. 1988); *see also In re Seven Seas Petroleum*, 522 F.3d 575, 584 (5th Cir. 2008).  Moreover, under general bankruptcy principles, if a claim belongs to the estate, the bankruptcy trustee is the ***only party*** that may bring the claim.  *See Matter of S.I. Acquisition*, 817 F.2d 1142, 1153–54 (5th Cir. 1987); *see also Seven Seas Petroleum*, 522 F.3d at 584.

---

[6] As discussed below, this claim must be dismissed for other reasons.

Plaintiffs' alleged injuries are all derivative of actions purportedly taken by BCBSTX against Little River.  For example, Plaintiffs allege that BCBSTX "wrongfully accused *Little River* of committing fraud," "stopped paying *Little River*," "directed other insurance companies to target *Little River*," and "conspired with [BCBSA], licensees, and other insurers, to wrongfully deny *Little River's* claims." First Am. Compl. ¶¶ 55–60.  Likewise, Plaintiffs' supposed injuries—being unable to sell their equity or otherwise continue operating Little River—derive from harms to Little River.  *See, e.g., id.* ¶ 36 (alleging that "BCBSTX's accusations against *Little River* percolated through the Texas medical community") (emphasis added).  Plaintiffs seek to distinguish the harm caused by Little River's accumulation of debt from the harm to Plaintiffs' equity value in Little River and their personal employment opportunities resulting from that accumulation of debt.  *Id.* ¶ 73 n.48.  But that is merely Plaintiffs' attempts to impermissibly claim Little River's alleged harms as their own.  Because the only direct harms alleged were to Little River, the claims brought in the First Amended Complaint belong to solely to the bankruptcy estate – which is currently pursuing claims against BCBSTX in an adversary proceeding.  *See S.I. Acquisition*, 817 F.2d at 1153–54; *see also Matter of Buccaneer Res., L.L.C.*, 912 F.3d 291, 293 (5th Cir. 2019).  And because Plaintiffs lack statutory authority to bring these claims, they should be dismissed under Rule 12(b)(6).  *Cf. Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 14 n.5 (1979).

### 2.     Texas Law Bars Corporate Owners from Suing on Behalf of the Corporation.

Plaintiffs are further barred from bringing their claims, other than intentional infliction of emotional distress, as a matter of Texas law.  *See Fowler v. Montis*, No. 13-13-00581-CV, 2014 WL 6602288, at *2 (Tex. App.—Corpus Christi Nov. 20, 2014, no pet.).[7]

---

[7] Although some federal courts have dismissed claims by corporate owners under Rule 12(b)(1) for lack of standing, the Texas Supreme Court recently held that the bar on stakeholder suits based on harms to a business is not rooted in standing, but rather in the lack of legal capacity to bring suit.  *Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763, 779

In Texas, "[i]t is well-settled than an individual stakeholder in a legal entity does not have a right to recover personally for harms done to the legal entity." *Siddiqui v. Fancy Bites, LLC*, 504 S.W.3d 349, 360 (Tex. App.—Houston [14th Dist.] 2016, pet. denied).  As a result, "[a] member of a limited liability company" like Little River "may not assert claims individually where the cause of action belongs to the company." *See Fowler*, 2014 WL 6602288, at *2 (internal citations omitted).  "It is the nature of the wrong, whether directed against the entity only or against the individual stakeholder, and not the existence of injury, that determines who may sue." *Id.*  This general principle applies not only to shareholders, but also to officers of a company. *Overtime Mktg. SE, LLC v. Beverage*, No. 4:14-CV-434, 2015 WL 430248, at *4 (E.D. Tex. Feb. 2, 2015); *see also In re SBMC Healthcare, LLC*, 519 B.R. 172, 184 (Bankr. S.D. Tex 2014), *aff'd*, No. AP-14013126, 2017 WL 2062992 (S.D. Tex. May 11, 2017) (dismissing individual claims).

As noted above, all of the allegations underlying Plaintiffs' claims are based on alleged misconduct by BCBSTX directed toward Little River, in the context of a dispute between BCBSTX and Little River concerning the latter's laboratory billing practices.  First Am. Compl. ¶¶ 26–36, 51–53.  Any claims arising from such conduct belong solely to Little River.  *See Fowler*, 2014 WL 6602288, at *2.  Any alleged harm suffered by these Plaintiffs as a result of BCBSTX actions directed toward Little River are completely derivative of the alleged harm to Little River, and are not actionable by Plaintiffs merely by virtue of their status as equity holders.  *Siddiqui*, 504 S.W.3d at 360 ("[A] limited partner does not have standing to sue for injuries to the partnership that ***that merely diminish the value of partnership interests or a share of partnership income***; such claims may be asserted only by the partnership itself.") (emphasis added); *see also Pike*, 610

---

(Tex. 2020).  Dismissal under Rule 12(b)(6) is appropriate based on a suit being brought by an improper party.  *See Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011).  Based on *Pike*, this Motion argues for dismissal under Rule 12(b)(6), but if the Court finds that Plaintiffs lack standing to bring these claims, it should dismiss Plaintiffs' claims under Rule 12(b)(1).

S.W.3d at 775 (explaining that "the cause of action for injury to the property of a corporation, *or the impairment or destruction of its business*, is vested in the corporation," and for that reason "[a] corporate stockholder cannot recover damages personally for a wrong done solely to the corporation, even though he may be injured by that wrong") (emphasis added); *see also Wingate v. Hajdik*, 795 S.W.2d 717, 719 (Tex. 1990), *superseded by statute on other grounds, Sneed v. Webre*, 465 S.W.3d 169 (Tex. 2015) ("A corporate stockholder cannot recover damages personally for a wrong done solely to the corporation, even though he may be injured by that wrong.").

### B.    Plaintiffs' Claims Are Barred By Res Judicata.

The First Amended Complaint should further be dismissed in its entirety because all of Plaintiffs' claims against BCBSTX are barred by *res judicata* based on the Arbitration.  "[R]es judicata bars the litigation of claims that either have been litigated or should have been raised in an earlier suit."  *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005), *abrogated on other grounds by TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23 (2001). "The test for res judicata has four elements: (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions."  *Id.* at 571.[8]  The purpose of *res judicata* is to "insure[] the finality of judgments."  *See Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 401 (5th Cir. 2009).

The first three elements are plainly met here.  First, the parties in the Arbitration and this action are in privity.  Plaintiffs served as the chief officers and held substantial ownership interests

---

[8] While res judicata is an affirmative defense, it provides a basis for dismissal when all of the elements appear on the face of the pleading and in "documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public records, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned."  *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013).

in Little River at the time of the Arbitration.  Indeed, Plaintiff Downton was both Little River's

counsel and its chief witness during the Arbitration.  *See* Final Award ¶¶ 3, 66.  Such identity of

interests and control of the litigation is sufficient to establish privity.  *See Drier v. Tarpon Oil Co.*,

522 F.2d 199, 200 (5th Cir. 1975) (finding privity following suit against a corporate defendant

where the individual defendant in a subsequent suit was the president of the corporation, held

significant ownership interests in the corporation, and participated in the prior litigation).  Second,

the Tribunal had jurisdiction over the parties' dispute.  Third, the Arbitration resulted in a final

judgment on the merits.  *See* Adv. Proc. No. 20-06006-RBK, Dkt. No. 9.

The fourth element is also met because both cases involve the same claims or causes of

action.  The Fifth Circuit applies the "transactional test" to determine whether both suits involve

the same claim or cause of action.  *Test Masters*, 428 F.3d at 571.  Under the transactional test, the

court examines whether the two cases under consideration are based on the "same nucleus of

operative facts."  *In re Southmark Corp.*, 163 F.3d 925, 934 (5th Cir. 1999) (citations omitted);

*see also Hall*, 305 F. App'x at 229 (affirming the dismissal under Rule 12(b)(6) based on *res

judicata*).  That the two cases request different relief, advance different substantive theories, or

different types of rights asserted do not prevent them from being the "same" for *res judicata*

purposes if they are based on the same nucleus of operative facts.  *In re Paige*, 610 F.3d 865, 872

(5th Cir. 2010).

Plaintiffs' claims are based on the same nucleus of operative facts as the claims asserted in

the Arbitration.  They all are based on the claim that BCBSTX engaged in tortious conduct

designed to divert business away from Little River and toward Quest.  The core factual allegations

on which the claims are based are likewise identical, including the core allegation that BCBSTX's

HFPP presentation was designed to dissuade other insurers from covering the use of laboratory

services in rural hospitals.  *Compare* Final Award ¶¶ 120–22, *with* First Am. Compl. ¶¶ 65, 77, 84, 96.  Likewise, Little River's allegations relating to reports to the OPM-OIG and CMS were also previously before the Tribunal.  *See* Final Award ¶¶ 124, 130.  In the Arbitration, Little River relied heavily on the Case Notification to support its fraudulent inducement theory, and it was discussed in the Final Award, which noted that Little River took the position that "BCBSTX exerted financial pressure on Little River to force its acceptance of the New Contracts by . . . making false reports to the OIG."  *Id.* ¶¶ 124, 128.  Little River similarly argued that BCBSTX made "improper accusations of fraudulent billing to CMS."  *Id.* ¶ 128.  BCBSTX's alleged scheme to promote Quest, the HFPP presentation, and the forwarding of the presentation materials to UnitedHealthcare, Case Notification, and report to CMS underlie ***all of Plaintiffs' claims***.  For example, Plaintiffs' claims based on Lanham Act violations, defamation, and business disparagement specifically reference BCBSTX's "[s]ubmitting a report to the OIG," "[m]aking at least one presentation to other insurance companies," and "[s]haring the false presentation with at least one insurer in writing."  First Am. Compl. ¶¶ 65, 77, 84.  Because the Arbitration and this action arise from the same nucleus of operative facts, they both involve the same causes of action under Fifth Circuit law.  *See Test Masters*, 428 F.3d at 571.

## II.   PLAINTIFFS HAVE NOT ADEQUATELY PLEADED ANY OF THEIR CLAIMS

In addition to the problems plaguing the First Amended Complaint as whole, each of Plaintiffs' claims suffer from multiple pleading flaws that justify dismissal.

### A.   The Lanham Act and Unfair Competition Claims (Counts 1 and 5).

Plaintiffs' Lanham Act and unfair competition claims should be dismissed for three reasons.  First, Plaintiffs lack statutory standing to bring these claims.  To bring a claim under the Lanham Act, the plaintiff must fall "within the class of plaintiffs whom Congress has authorized to sue under § 1125(a)."  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128

(2014).[9]  To meet this requirement, a plaintiff must "allege an injury to a commercial interest in reputation or sale" that was "proximately caused by violations of the statute."  *Id.* at 132.  In bringing claims under the Lanham Act and for unfair competition, a party must assert its own rights.  *See Superior MRI Servs., Inc. v. All. HealthCare Servs., Inc.*, 778 F.3d 502, 506 (5th Cir. 2015).

Plaintiffs do not fall within the Lanham Act's authorized class because they do not assert their own rights.  BCBSTX's alleged false statements all concerned Little River, whose Trustee is currently pursuing unfair competition against BCBSTX based on the same factual allegations.  *See* First Am. Compl. ¶¶ 14–15, 26–36; *see also* Background § D, *supra*.  Moreover, while Plaintiffs have alleged harm to themselves as "the **owners** and **officers** of Little River Healthcare," *id.* ¶ 70 (emphasis added), Plaintiffs are simply not permitted to bring a Lanham Act claim in either capacity.  *See Lexmark*, 572 U.S. at 133–34; *see also Superior MRI Servs.*, 778 F.3d at 506.

Second, Plaintiffs' unfair competition claim is barred by the statute of limitations.  An unfair competition claim is time-barred two years after the occurrence of the complained-of injury.  *See Derrick Mfg. Corp. v. Sw. Wire Cloth, Inc.*, 934 F. Supp. 796, 806 (S.D. Tex. 1996) (collecting cases demonstrating two-year statute of limitation applies to unfair competition actions).  Plaintiffs' claim for unfair competition accrued at the very latest in January 2018 because their complained-of injuries (the alleged inability to sell their equity interests in Little River and failure to complete the Georgetown Surgery Center) occurred in 2017.  First Am. Compl. ¶¶ 13–15.  Thus, the unfair competition claim became stale at the very latest in January 2020, more than nine months before Plaintiffs filed suit.

---

[9] The standing analysis under the Lanham Act and for the state law unfair competition claim is the same because "Texas does not have a common-law cause of action for false advertising," and Texas courts have analyzed claims of false advertising under the Lanham Act.  *OGD Equip. Co. v. Overhead Door Corp.*, 4:17-CV-00898-ALM-KPJ, 2019 WL 5390589, at *11 (E.D. Tex. July 15, 2019).

Third, Plaintiffs have failed to allege any statement BCBSTX made "in commercial advertising or promotion." *See Pizza Hut v. Papa Johns, Int'l, Inc.*, 227 F.3d 489, 495 (5th Cir. 2000); *see also* 15 U.S.C. § 1125(a). In the Fifth Circuit, "commercial advertising or promotion" under Section 43(a)(1)(B) requires:

> (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services. While the representations need not be made in a "classical advertising campaign," but may consist instead of more informal types of "promotion," the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry.

*Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1384 (5th Cir. 1996) (citation omitted). Plaintiffs have not alleged and cannot allege facts to show BCBSTX, a managed care company, was in competition with Plaintiffs, who are individuals and trusts.[10] Plaintiffs have also not alleged BCBSTX made any statements "for the purpose of influencing consumers to buy [BCBSTX's] goods or services." *Cf.* First Am. Compl. ¶¶ 65–69.

## B.    Defamation Claim (Count 2).

Plaintiffs' defamation claim should be dismissed for two reasons. First, it is time-barred. Under Texas law, a claim for defamation expires one year after the alleged defamatory matter is published or circulated. Tex. Civ. Prac. & Rem. Code § 16.002 (a); *see also Velocity Databank, Inc. v. Shell Offshore, Inc.*, 456 S.W.3d 605, 609 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) ("[A] defamation claim accrues when the matter is published or circulated."). Here, the last of BCBSTX's complained-of statements happened in July 2017—more than three years before

---

[10] Plaintiffs implausibly allege that BCBSTX and Little River were competitors, but there are no such allegations as to Plaintiffs. *See* First Am. Compl. ¶ 25.

Plaintiffs filed the original Complaint.  Plaintiffs' claim for defamation is therefore time-barred by more than two years.

Second, Plaintiffs have not adequately pleaded each of the elements of a defamation claim. To sustain a defamation claim, the plaintiff must allege that the defendant: (1) published a statement; (2) that was defamatory concerning the plaintiff; (3) while acting with the requisite degree of fault.[11]  *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998).  Furthermore, the allegedly defamatory statement must have been made about the plaintiff.  *Huckabee v. Time Warner Entm't Co.*, 19 S.W.3d 413, 429 (Tex. 2000); *see also Newspapers, Inc. v. Matthews*, 339 S.W.2d 890, 893 (Tex. 1960).

Plaintiffs do not allege that BCBSTX made statements concerning any of the **Plaintiffs**. *See* First Am. Compl. ¶ 77.  Plaintiffs baldly assert—without legal authority—that "statements falsely accusing a company of fraud are deemed statements about the company's owners."  *Id.* ¶ 78.  Though the Texas Supreme Court has held that a business defamation claim properly belong belongs to the owner of the business and not the business itself, *see, e.g.*, *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 151 n.35 (Tex. 2014), that does not mean that defamatory statements may be *automatically* attributed to the owners.  *See, e.g.*, *Newspapers, Inc.*, 339 S.W.2d at 894 (dismissing business owner's defamation claim where an article referenced the business but did not name the owner); *Vice v. Kasprzak*, 318 S.W.3d 1, 14 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (finding defamation claim was unavailable to individual plaintiffs because they were not referenced in the allegedly defamatory communication). Furthermore, the owner of the business at issue in this case—*i.e.*, the hospitals and lab services—is Little River, not Plaintiffs.  Moreover, Plaintiffs were not even the owners of Little River.  They

---

[11] A private individual must plead negligence whereas a public figure must allege "actual malice."  *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015) (orig. proceeding).

allege only that they owned percentages of an entirely separate entity, Compass Pointe, which owned interests in another entity, which owned Little River.  First Am. Compl. ¶¶ 1–4.

### C.   Business Disparagement Claim (Count 3).

Plaintiffs' business disparagement claim is deficient for two reasons.  First, when the gravamen of a business disparagement claim "is defamatory injury to reputation," a one-year limitations period applies.  *See Nath v. Tex. Children's Hosp.*, 446 S.W.3d 355, 370 (Tex. 2014). Because the last of BCBSTX's complained-of statements happened in July 2017—more than three years before Plaintiffs filed the original Complaint—Plaintiffs' claim for business disparagement is time-barred by more than two years.

Second, Plaintiffs have failed to adequately allege their claim.  To state a claim for business disparagement, a plaintiff must plead that (1) the defendant published false and disparaging information about the plaintiff, (2) with malice, (3) without privilege, (4) that resulted in special damages to the plaintiff.  *Waste Mgmt.*, 434 S.W.3d at 155; *see also Newspapers, Inc.*, 339 S.W.2d at 890 ("The settled law requires that the false statement point to the plaintiff ***and to no one else***.") (emphasis added).  Plaintiffs' claim fails the first element because Plaintiffs do not allege BCBSTX published anything, let alone false and disparaging information, ***about Plaintiffs***.  First Am. Compl. ¶ 84.  Plaintiffs do not identify any purported statement concerning any person or entity other than Little River, nor do they plead facts establishing how anyone would understand any challenged statement to be referring to any of them, rather than Little River.  In short, the allegedly defamatory statements do not "point to the plaintiff[s] and no one else." *See Vice*, 318 S.W.3d at 13–14.

### D.   Tortious Interference with Prospective Business Relations Claim (Count 4).

Plaintiffs' tortious interference claim should be dismissed for two reasons.  First, when "allegedly defamatory statements form the sole basis for a plaintiff's tortious interference claim,

defamation's one-year statute of limitations applies." *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 146–47 (5th Cir. 2007).  As the last allegedly defamatory statements were made in 2017, Plaintiffs' tortious interference claim is time-barred by more than three years.

Second, Plaintiffs have failed to adequately plead this claim.  A claim for tortious interference with prospective business relations requires: (1) a reasonable probability that the plaintiff would have entered into a business relationship with a third person; (2) the defendant intentionally interfered with the relationship; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff's injury; and (5) the plaintiff suffered actual damage or loss.  *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013).

Plaintiffs have failed to allege a claim for tortious interference with potential business relations for several reasons.  As an initial matter, Plaintiffs allege that, "[a]bsent BCBSTX's tortious actions, it is ***likely*** the Georgetown Surgery Center ***would have been built*** with Plaintiffs as key investors."  First Am Compl. ¶ 90 (emphasis added).  But these speculative allegations do not sufficiently state  what business relationships Plaintiffs would have entered with what third person.  Such allegations do not meet the "reasonable probability" standard.  *See Coinmach Corp.*, 417 S.W.3d at 923.

Moreover, tortious interference requires ***intentional interference*** with a prospective relationship.  Interference is intentional "if the actor desires to bring it about or if he knows that the interference is certain or substantially certain to occur as a result."  *Bradford v. Vento*, 48 S.W.3d 749, 757 (Tex. 2001).  Here, Plaintiffs have not alleged any intentional interference by BCBSTX related to any prospective relationship between themselves and a third party, nor do they allege any intent to interfere with the Georgetown Surgery Center.  Indeed, the First Amended

Complaint does not even allege that BCBSTX knew of the Georgetown Surgery Center or the alleged plans to build it.  As a result, Plaintiffs have not pled the "intentional interference" element.

### E.      Civil RICO Claim (Count 8).

To state a civil RICO claim, a plaintiff must allege an injury caused by "(1) the conduct (2) of an enterprise (3) through a pattern of (4) racketeering activity."  *Elliot v. Foufas*, 867 F.2d 877, 880 (5th Cir. 1989).  Moreover, the RICO violation must have been both the but-for and proximate cause of the plaintiff's injury.  *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 654 (2008). Plaintiffs' RICO claim should be dismissed because they fail to adequately plead (1) any predicate acts, (2) a RICO "enterprise," and (3) proximate cause between Plaintiffs' injuries and the alleged RICO conduct.

### 1.      Plaintiffs fail to adequately allege any predicate acts.

"Racketeering activity" is defined by reference to various state and federal offenses, each of which subsumes additional elements which the plaintiff must plead.  18 U.S.C. § 1961(1); *Elliot*, 867 F.2d at 880.  Plaintiffs allege three types of predicate acts in support of their civil RICO claim: violations of (1) 18 U.S.C. § 1343 (wire fraud); (2) 18 U.S.C. § 1951 (extortion); and (3) 18 U.S.C. § 1503 (corrupt influence).  Plaintiffs have failed to plead a violation of any of those statutes.

#### a.      Wire Fraud

The elements of wire fraud under 18 U.S.C. § 1343 are (1) a scheme to defraud by means of false or fraudulent representation; (2) interstate use of a wire to execute the scheme; (3) the use of a wire by the defendant connected with the scheme; and (4) actual injury to the plaintiff.  *Labaty v. UWT, Inc.*, 121 F. Supp. 3d 721, 755 (W.D. Tex. 2015).  Rule 9(b)'s heightened particularity requirement applies to allegations of wire fraud as a predicate act for a RICO claim.  *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1138 (5th Cir. 1992).  "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as

well as the identity of the person making the misrepresentation and what he obtained thereby." *Id.* at 1139.  "Defendants are not required to guess what statements were made in connection with a plaintiff's claims and how and why they are fraudulent." *Allstate Ins. Co. v. Benhamou*, 190 F. Supp. 3d 631, 658 (S.D. Tex. 2016).

The First Amended Complaint lacks any well-pleaded factual allegations establishing wire fraud.  They do not identify a single wire transmission or its contents, let alone facts establishing how the communication was false.  They simply allege twelve categories of conduct or communication in which BCBSTX allegedly participated and a conclusory assertion that each constitutes a "predicate act."  First. Am. Compl. ¶ 96; *see St. Germain v. Howard*, 556 F.3d 261, 263–64 (5th Cir. 2009) (per curiam) (affirming dismissal of civil RICO claims were acts of wire fraud were not plead with particularity); *MWK Recruiting, Inc. v. Jowers*, 1:18-CV-444-RP, 2020 WL 7229977, at *8 (W.D. Tex. Dec. 8, 2020); *Arruda v. Curves Int'l, Inc.*, 6:20-CV-00092-ADA, 2020 WL 4289380, at *6 (W.D. Tex. July 27, 2020), *aff'd,* 2021 WL 2654533 (5th Cir. June 28, 2021).  Moreover, the First Amended Complaint fails to plead the connection between the purported instances of wire fraud and Plaintiffs' alleged injuries.  Instead, the First Amended Complaint conclusorily alleges that "[t]he Blue Cross Cabal [ ] largely achieved its goal of stopping rural hospital outreach laboratories and increasing its profits."  *See* First Am. Compl. ¶ 52.  Plaintiffs' claims, therefore, lack the specificity necessary to survive a motion to dismiss.

### b.   Extortion

A violation of Section 1951 requires: "(1) that the defendant induced a person to part with property; (2) the defendant acted knowingly and willfully by means of extortion; and (3) that the extortionate transaction delayed, interrupted, or adversely affected interstate commerce." *McPeters v. Edwards*, 806 F. Supp. 2d 978, 990 (S.D. Tex. 2011) (citing *United States v. Stephens*, 964 F.2d 424, 429 (5th Cir. 1992)), *aff'd,* 464 F. App'x 351 (5th Cir. 2012).  "Extortion" is defined

under the statute as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2).

The First Amended Complaint fails to plead that BCBSTX engaged in extortion in violation of 18 U.S.C. § 1951.  First, Plaintiffs claim that BCBSTX "attempted to extort Plaintiffs . . . into settling claims by threatening government action if they refused BCBSTX's demands." *See* First Am. Compl. ¶ 51.  But this does not constitute extortion.  And Plaintiffs' lone supporting allegation—that BCBSTX told Little River's outside counsel that Little River had "a lot more to worry about" than its dispute with BCBSTX, *id.* ¶ 48—is plainly insufficient, since BCBSTX is a private corporation that is not in the position to threaten government action.  Because the allegations in the First Amended Complaint do not support an inference that BCBSTX extorted Little River, Section 1951 cannot serve as a RICO predicate here.[12]

Second, Plaintiffs have not alleged that BCBSTX "induced" Little River to part with property.  The First Amended Complaint only alleges that BCBSTX "[w]rongfully den[ied]" Little River laboratory claims and "[w]rongfully recoup[ed]" funds paid to Little River.  *See* First Am. Compl. ¶ 51.  But these allegations, which were litigated to final judgment in the Arbitration, do not suggest that BCBSTX "induced" Little River to part way with its property.  Accordingly, Plaintiffs have not alleged a RICO predicate act based on 18 U.S.C. § 1951.

c.   Corrupt Influence

The third alleged predicate act is violations of 18 U.S.C. § 1503.  A violation of that statute requires a showing that (1) a judicial proceeding was pending; (2) the defendant had knowledge of the judicial proceeding; and (3) the defendant acted corruptly with the specific intent to

---

[12] Plaintiffs' claim fails to the extent it alleges "threats of extortion" as the plain text of the statute does not create liability for mere "threats" of extortion.  *See* 18 U.S.C. § 1951(a)

influence, obstruct, or impede that judicial proceeding in its due administration of justice.  *United States v. Richardson*, 676 F.3d 491, 502 (5th Cir. 2012).

Plaintiffs have failed to adequately allege any element of Section 1503, as the First Amended Complaint does not allege any judicial proceeding that BCBSTX corruptly interfered with.  Accordingly, Section 1503 cannot serve as a predicate act for Plaintiffs' RICO claim.

### 2.    Plaintiffs fail to allege a RICO enterprise.

"A RICO enterprise can be either a legal entity or an association-in-fact."  *Allstate*, 190 F. Supp. 3d at 648 (citing *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 447 (5th Cir. 1995)).  In either case, the enterprise must be an entity separate and apart from the pattern of activity in which it engages.  *Id*. at 650.

Plaintiffs have failed to allege that the "Blue Cross Cabal" is an entity separate and apart from the alleged RICO violations.  Instead, the First Amended Complaint merely offers that "[t]he Blue Cross Cabal is an enterprise engaged in and whose activities affect interstate commerce."  *See* First Am. Compl. ¶ 95.  The only ties binding the entities in the "Cabal" together are their alleged participation in the alleged pattern of RICO violations.  *See id*. ¶¶ 37–53.  Accordingly, Plaintiffs' claim must fail.  *See Brunig v. Clark*, 560 F.3d, 297 (5th Cir. 2009) (dismissing civil RICO claim where plaintiff did not plead a "separate and apart" enterprise).

### 3.    Plaintiffs fail to allege proximate cause.

Plaintiffs' RICO claim should be dismissed for the independent reason that they have failed to allege that any injuries they allegedly suffered were proximately caused by the alleged RICO violations.  The RICO statute authorizes a cause of action by "[a]ny person injured in his business or property by reason of a violation of" the statute.  18 U.S.C. § 1964(c).  The "by reason of" language requires a "direct relation between the injury asserted and the injurious conduct alleged."  *Hemi Grp., LLC v. City of New York, NY*, 559 U.S. 1, 9 (2010); *see also Anza v. Ideal Steel Supply*

*Corp.*, 547 U.S. 451, 457–58 (2006); *Holmes v. Sec. Investor Protection Corp.*, 503 U.S. 258, 272–73 (1992).  Thus, a RICO claim fails where "the conduct directly causing the harm [is] distinct from the conduct giving rise to the harm." *Hemi*, 559 U.S. at 10 (citing *Anza*, 547 U.S. at 458).

In *Hemi*, the City of New York brought a civil RICO claim against Hemi Group, arguing that Hemi sold cigarettes to city residents and failed to submit the required customer information to the state, thus depriving the City of the information needed to determine which customers had failed to pay the City cigarette tax.  *Id*. at 9.  The Supreme Court explained that the City's theory rested "not just on separate *actions*, but separate actions carried out by separate *parties*." *Id*. at 11 (emphasis in original).  It declined to extend RICO liability to "situations where the defendant's fraud on the third party (the State) has made it easier for a *fourth* party (the taxpayer) to cause harm to the [City]." *Id*. (emphasis in original).  "Put simply, . . . the City's harm was directly caused by the customers, not Hemi" and its theory was too attenuated to support a RICO claim.  *Id*. at 11.

Plaintiffs' theory here is likewise far too attenuated to support a RICO claim.  Even if Plaintiffs' predicate acts were adequately pleaded (and they are not), all of the alleged conduct underlying those acts was directed by BCBSTX to or concerning Little River, *i.e.*, the formation of the "Blue Cross Cabal" to "avoid [the Cabal's] contractual obligations to hospitals" by: (1) "using regulators as leverage against hospitals in payment negotiations" and (2) reporting "hospitals to the federal government as committing fraud to create leverage in negotiations over new contracts and money owed."  First. Am. Compl. ¶ 38.  Plaintiffs' alleged injuries, by contrast, are that they "(1) did not receive distributions due to them as part of a recapitalization of Little River that was frustrated by the Blue Cross Cabal's actions; and (2) lost their jobs as a result of the Blue Cross Cabal's actions."  *Id.* ¶ 99.  These purported injuries are attenuated and derivative of the alleged RICO violations, which are premised on the denial of laboratory claims submitted

by Little River to BCBSTX.[13]   As in *Hemi*, Plaintiffs' alleged harms were caused by "separate

actions carried out by separate parties" who are not involved in this action.  *See Hemi*, 559 U.S. at

11; *see also* First Am. Compl. ¶¶ 42–44 (alleging actions by Anthem, a non-party to this lawsuit).

Because the alleged RICO violations are not directly related to Plaintiffs' injuries, the First

Amended Complaint fails to satisfy RICO's proximate cause element and the RICO claim must,

therefore, fail.  *See Hemi*, 559 U.S. at 9; *see also Varela v. Gonzales*, 773 F.3d 704, 709–711 (5th

Cir. 2014) (affirming dismissal of RICO claim because plaintiffs failed to sufficiently plead

depressed wages were proximately caused by the alleged RICO violations).

      **F.**      **The Antitrust Claims (Counts 7 and 8).**

            **1.**      **Plaintiffs Lack Standing to Bring Their Antitrust Claims.**

In the Arbitration, the Tribunal entered judgment for BCBSTX on Little River's antitrust

claim, asserted under the TFEAA, on the ground that Little River lacked antitrust standing.  Even

if this Court declines to apply that ruling here on the basis of *res judicata*, the same conclusion

applies to these Plaintiffs' antitrust claims.  "The Supreme Court has long held that suits" based

on violations of antitrust laws "require not only injury to the plaintiff's business or property

resulting from the alleged violation, but also a showing of antitrust injury and standing."  *Norris*

*v. Hearst Tr.*, 500 F.3d 454, 465 (5th Cir. 2007).[14]   An "antitrust injury" is an "injury of the type

the antitrust laws were designed to prevent and that flows from that which makes defendants' acts

unlawful."  *Id.* (internal quotation marks omitted).  Even if a plaintiff is able to show an antitrust

---

[13] Notably, the Tribunal expressly rejected Little River's claim that BCBSTX's conduct caused Little River's bankruptcy.  *See* Final Award ¶ 147 ("There are many myriad factors that can affect a company's viability, such as management capability, market conditions, legislative or regulatory uncertainty, and any number of internal and external influences. . . . .  BCBSTX was within its rights to terminate the initial Contracts, and the Tribunal has concluded that BCBSTX did not act fraudulently in renegotiating the New Contracts. Accordingly, any extent to which these actions may have 'further exacerbated' Little River's liquidity problems cannot be considered causative.")
[14] Courts are "statutorily instructed to interpret the TFEAA in harmony with federal judicial interpretation of equivalent federal laws."  *Apani Sw., Inc. v. Coca-Cola Enters., Inc.*, 300 F.3d 620, 628 (5th Cir. 2002).

*injury*, it must also show that it is the *proper plaintiff* to bring antitrust claims based on (1) whether the plaintiff's injuries or their causal link to the defendant are speculative, (2) whether other parties have been more directly harmed, and (3) whether allowing this plaintiff to sue would risk multiple lawsuits, duplicative recoveries, or complex damage apportionment. *Id.*

Plaintiffs do not have antitrust standing because they do not sufficiently allege an antitrust injury.  Plaintiffs' antitrust theory is that by allegedly causing Little River to go out of business, Plaintiffs lost their jobs, somehow causing harm to the undefined and amorphous "labor market for persons providing services to rural hospitals," in which the Individual Plaintiffs are participants.  First Am. Compl. ¶ 101.  However, the antitrust laws exist to protect *competition*— not individual competitors.  *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 225 (1993).  Plaintiffs assert that Little River's bankruptcy adversely affected *them* "through loss of employment and reduced income."  First Am. Compl. ¶¶ 101–02.  But the First Amended Complaint does not allege any facts establishing how their loss of employment at Little River somehow worked a harm to competition in the entire market for "rural hospital labor services" in any (undefined) geographic market.  Nor are there any allegations that, even if such harm actually existed, it was the result of BCBSTX's alleged anticompetitive conduct; indeed, much of the First Amended Complaint is dedicated to describing the "crisis" in rural healthcare, and it specifically notes that 22 rural hospitals have been closed in Texas "in the last decade alone" entirely independent of any alleged antitrust actions by BCBSTX or other health insurance companies. First. Am. Compl. ¶ 9.  And, as noted above, the Tribunal ***specifically found*** that Little River's claim based on violations of the TFEAA brought in the Arbitration was insupportable because

Little River failed to show any antitrust injury—and Plaintiffs' alleged injuries here are even more attenuated than those claimed by Little River.  Final Award ¶ 122.[15]

For the same reason, Plaintiffs fail to allege that they are the proper party to bring the antitrust claims.  Plaintiffs' alleged antitrust injury is effectively a supposed inability to obtain work as a result of BCBSTX's anticompetitive activity in the rural hospital space.  *See* First Am. Compl. ¶ 102.  Apart from the fact that this allegation does not establish *antitrust* injury (*i.e.*, harm to *competition*, as distinct to harm to individual competitors), this alleged harm is entirely derivative of harms allegedly suffered by Little River.  Thus, Plaintiffs seek to sue on injuries that flow from BCBSTX's allegedly anticompetitive conduct but were suffered in another market—a theory of standing that has long been rejected by the Fifth Circuit.  *See Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 423 (5th Cir. 2001) (affirming district court's reasoning that "[p]arties whose injuries, though flowing from that which makes the defendant's conduct unlawful, are experienced in another market do not suffer antitrust injury").  Plaintiffs accordingly lack antitrust standing to bring these claims.

### 2.     Plaintiffs' Antitrust Claims Are Factually Deficient.

Plaintiffs fail to adequately allege either conspiracy or any relevant antitrust market. Conspiracy requires allegations that the defendants "engaged in concerted action, defined as having a conscious commitment to a common scheme designed to achieve an unlawful objective." *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 373 (5th Cir. 2014). Parallel conduct, by itself, "does not suggest conspiracy[.]" *Twombly*, 550 U.S. at 556–57.

---

[15] "The Tribunal has examined the evidence presented and concludes that it is insufficient to demonstrate that BCBSTX's alleged anticompetitive conduct decreased consumer choice or quality in available laboratory services in a sufficiently defined area, or that it increased consumer prices."

Plaintiffs' sole allegation concerning conspiracy is that BCBSTX "conspire[d] with other insurance companies to reduce payments to rural hospitals."  First Am Compl. ¶ 101.  Plaintiffs' bare assertion contains neither factual allegations demonstrating that BCBSTX and any other insurer agreed on rates to be paid to Little River or "to reduce payments to rural hospitals," nor any facts supporting an inference of such conspiracy.  Indeed, there is no well-pleaded allegation that any insurer other than BCBSTX took any adverse action with respect to its own contract with Little River at all—let alone facts that would support the conclusion that any such other insurer's action was taken pursuant to an unlawful agreement with BCBSTX, as opposed to such other insurer's independent conduct.  And while the First Amended Complaint uses the phrase "price fixing," there is not a single allegation supporting that characterization—for example, there are no allegations that BCBSTX and any third-party agreed on the amounts each would pay to Little River.

Plaintiffs repeatedly allege that BCBSTX and other insurance payors discussed rural hospitals' potentially fraudulent billing practices with government regulators and each other, and then they self-servingly conclude that such discussions must have been in the context of a conspiracy because "dozens of hospitals across the country did not suddenly decide to commit fraud."  First. Am. Compl. ¶ 46.  But this entirely ignores the market conditions at the time these actions were taken, which the Tribunal already noted were marked by "widespread concerns in the industry at the time about potential fraudulent laboratory billing."  Final Award ¶ 130.  Given these widespread concerns, the plausible inference—particularly without any sufficient allegations to the contrary—are that the insurance payors Little River complains of took a series of independent actions in response to legitimate fears of billing fraud.  *See Twombly*, 550 U.S. at 554 (explaining that a mere showing of parallel conduct is inadequate to support an antitrust claim because such

conduct is "just as much in line with a wide swath of rational and competitive business strategy unilaterally prompted by common perceptions of the market").  Plaintiffs' failure to plead any unlawful agreement between BCBSTX and anyone else dooms their antitrust claim.

Plaintiffs' claim also fails because it lacks allegations of any relevant market.  To succeed on an antitrust claim, Plaintiffs "must define the relevant market" in which competition was allegedly impacted by the defendant's actions.  *Shah v. VHS San Antonio Parts., L.L.C.*, 985 F.3d 450, 454 (5th Cir. 2021).  "Without a definition of the market there is no way to measure the defendant's ability to lessen or destroy competition."  *Id.* (internal quotation marks omitted).  A relevant market has two components: a product market and a geographic market.  *Id.*  "Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient."  *Apani*, 300 F.3d at 628.

The First Amended Complaint fails both tests.  First, it does not define the relevant market ***at all***, much less with "reference to the rule of reasonable interchangeability and cross-elasticity of demand."  Instead, the First Amended Complaint baldly concludes that BCBSTX's actions directed toward Little River resulted in its bankruptcy, leading to harm to the "rural hospital labor market," but gives no definition of the relevant products or geographic reach of the "rural hospital labor market."  Plaintiffs' proposed product market is obviously both overinclusive (to the extent it suggests that file clerks are in the same labor market as CEOs), and underinclusive (to the extent it suggests, implausibly, that individuals who seek employment with "rural hospitals" are somehow not also in competition for labor with individuals who provide the same services to urban hospitals and other healthcare entities).  Nor is there any proposed geographic market definition,

*i.e.*, facts that would establish the size of the geographic market for "rural hospital labor" (which would necessarily differ depending on the type of job at issue).  This lack of market definition makes it impossible to determine the extent to which BCBSTX's alleged anticompetitive conduct actually harmed the relevant market, and Plaintiffs make no attempt to do so other than to allege that they personally have lost their jobs and have suffered a reduction in income.  *See* First Am. Compl. ¶ 102.  Plaintiffs' failure to plead facts establishing a plausible product and geographic market is fatal to their antitrust claims.  *See PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 615 F.3d 412, 418–19 (5th Cir. 2010) (dismissing antitrust claims for failure to adequately define the product market); *Apani*, 300 F.3d at 632–33 (same for geographic market).

### G.      Intentional Infliction of Emotional Distress (IIED) (Count 9).

Plaintiffs' IIED claim should be dismissed for two reasons.  First, it is time-barred.  An IIED claim must be brought within two years of the complained-of injury.  *Zurita v. Lombana*, 322 S.W.3d 463, 473 (Tex.App.—Houston [14th Dist.] 2010, pet. denied); *see also* Tex. Civ. Prac. & Rem. Code § 16.002(a) (establishing two-year statute of limitations for IIED claim).  Plaintiffs' claim for IIED accrued by January 2018 because their complained-of injuries (the alleged inability to sell their equity interests in Little River and failure to complete the Georgetown Surgery Center) occurred in 2017.  *See* First Am. Compl. ¶¶ 13–15.  Plaintiffs' claims became stale, at the very latest, in January 2020, more than nine months before Plaintiffs filed suit.

Second, Plaintiffs have not adequately pleaded a claim for IIED.  To state a claim for IIED, a plaintiff must allege that: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused plaintiff emotional distress; and (4) the emotional distress suffered by plaintiff was severe.  *Bradford*, 48 S.W.3d at 758.  IIED is a "gap-filler tort" and does not supplant or duplicate existing remedies.  *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816, 818 (Tex. 2005).  "Where the gravamen of the complaint is

really another tort, intentional infliction of emotional distress is unavailable." *Louis v. Mobil Chem. Co.*, 254 S.W.3d 602, 610 (Tex. App.—Beaumont 2008, pet. denied).

Here, the gravamen of the First Amended Complaint is entirely other torts, including defamation and business disparagement. Indeed, Plaintiffs' IIED count do not allege ***any*** additional acts by BCBSTX beyond those undergirding the other causes of action and clearly reveal that the gravamen of the IIED claim is other torts. *See* First Am. Compl. ¶¶ 105–06.

Additionally, the IIED claim fails because Individual Plaintiffs' allegations of "extreme and outrageous" behavior is conclusory.[16] Whether the defendant's conduct is extreme and outrageous is a matter of law. *Bradford*, 48 S.W.3d at 758. "Extreme and outrageous," conduct must "go beyond all possible bounds of decency, and be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* BCBSTX's alleged report does not come close to this level of conduct. *See Tex. Farm Bureau Mut. Ins. Cos. v. Sears*, 84 S.W.3d 604, 613 (Tex. 2002) (declining to impose liability on insurance company liable for reporting possible fraud).

### H.   Exemplary Damages (Count 10).

Plaintiffs' request for exemplary damages relies on their defamation, business disparagement, and Lanham Act claims, each of which fail as a matter of law for the reasons set forth above. *See* §§ II–III, *supra*. Accordingly, Count 10 should be dismissed.

### CONCLUSION

For the foregoing reasons, BCBSTX respectfully requests that the Court dismiss Plaintiffs' First Amended Complaint in its entirety with prejudice. BCBSTX requests an oral hearing on this Motion.

---

[16] Under Texas law, non-human entities—such as trusts—cannot experience mental suffering. *Haygood v. Chandler*, No. 12-02-00239-CV, 2003 WL 22480560 (Tex. App.—Tyler Oct. 31, 2003, pet. denied); *see also GTA Sw., Inc. v. Bruce*, 998 S.W.2d 605, 618 (Tex. 1999) (explaining that the severity of emotional distress is measured by a reasonable person standard). As such, the IIED claims brought by the Trust Plaintiffs must be dismissed.

Dated:  September 27, 2021

Respectfully submitted,

By:     _/s/ Penny P. Reid_
Yvette Ostolaza
State Bar. No. 00784703
Penny P. Reid
State Bar No. 15402570
Fraser Holmes
State Bar No. 24110015
SIDLEY AUSTIN LLP
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
Telephone:  (214) 981-3300
Facsimile:  (214) 981-3400
yvette.ostolaza@sidley.cm
preid@sidley.com
fholmes@sidley.com

– and –

Brian P. Kavanaugh
State Bar No. 24115132
SIDLEY AUSTIN LLP
One South Dearborn St.,
Chicago, Illinois 60603
Telephone:  (312) 853-7617
Facsimile:  (312) 853-7036
bkavanaugh@sidley.com

– and –

Conrad Coutinho
State Bar No. 24094601
SIDLEY AUSTIN LLP
Wells Fargo Plaza
1000 Louisiana Street, Suite 5900
Houston, Texas 77002
Telephone:  (713) 495-4510
Facsimile:  (713) 495-7799
ccoutinho@sidley.com

*Counsel for Health Care Service
Corporation, a Mutual Legal Reserve*

*Company, d/b/a Blue Cross and Blue Shield
of Texas*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Motion to Dismiss Plaintiffs'

First Amended Complaint was served on all counsel of record by electronically filing it with the

Clerk of the Court using the CM/ECF system on September 27, 2021.

                                           */s/ Penny P. Reid*