**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **JEFFREY MADISON, RYAN DOWNTON,** | § | |
| **PEGGY BORGFELD, KEVIN OWENS, JEFF** | § | |
| **AND ASHLEY MADISON TRUST, and** | § | |
| **KEVIN J. OWENS MANAGEMENT TRUST,** | § | |
| | § | |
| **Plaintiffs,** | § | **Case No. 6:20-CV-00835-ADA** |
| | § | |
| **v.** | § | |
| | § | |
| **HEALTH CARE SERVICE CORPORATION** | § | **JURY DEMAND** |
| **d/b/a BLUE CROSS AND BLUE SHIELD OF** | § | |
| **TEXAS,** | § | |
| | § | |
| **Defendant,** | § | |

**PLAINTFFS' RESPONSE TO DEFENDANT'S
AMENDED MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Plaintiffs Jeffrey Madison, Ryan Downton, Peggy Borgfeld, Kevin Owens, Jeff and Ashely Madison Trust, and Kevin J. Owens Management Trust (collectively, "Plaintiffs") hereby file this Response to the Motion to Dismiss Plaintiffs' First Amended Complaint filed by Defendant Health Care Service Corporation d/b/a Blue Cross & Blue Shield of Texas ("BCBSTX") and would show the Court as follows.

# TABLE OF CONTENTS

Page

Table of Contents ............................................................................................................... ii

Table of Authorities ........................................................................................................... iv

Introduction ........................................................................................................................ 1

Legal Standards .................................................................................................................. 1

Argument ............................................................................................................................ 2

     I.     Plaintiffs Own Their Claims Against BCBSTX ................................................... 2

          A.     Plaintiff Have Standing to Bring Lanham Act and Unfair Competition Claims ............................................................................... 5

          B.     Plaintiffs Have Standing to Bring Defamation and Business Disparagement Claims ................................................................. 9

          C.     Plaintiffs Have Standing to Bring Tortious Interference Claims.............. 10

          D.     Plaintiffs Have Standing to Bring RICO Claims ...................................... 11

          E.     Plaintiffs Have Standing to Bring Antitrust Claims ................................ 11

     II.     *Res Judicata* Does Not Bar Plaintiffs' Claims ...................................................... 12

          A.     Plaintiffs And Little River Are Not In Privity ......................................... 12

          B.     This Lawsuit Does Not Involve the Same Claims as the Arbitration ....... 13

          C.     Little River "Could Not and Should Not" Have Brought Additional Claims in Arbitration ................................................................. 14

     III.     Plaintiffs' Claims Are Not Factually Deficient ................................................... 15

          A.     Plaintiffs' Allegations State a Cause of Action Under the Lanham Act .................................................................................. 15

          B.     Plaintiffs Allegations State Claims For Defamation and Business Disparagement ......................................................................... 17

          C.     Plaintiffs Allegations State a Claim For Tortious Interference ............... 19

          D.     Plaintiffs Allegations State a Civil RICO Claim ...................................... 20

      1.      Plaintiffs Plead Predicate Acts ..................................................... 20

          a.      The Blue Cross Cabal Violated 18 U.S.C. § 1343 (Wire Fraud) ........................................................................ 21

          b.      The Blue Cross Cabal Violated 18 U.S.C. § 1951 (Extortion) ............................................................................. 23

      2.      Plaintiffs Pled a RICO Enterprise ................................................. 24

      3.      Plaintiffs Pled Proximate Causation of Damages ......................... 25

   E.     Plaintiffs Adequately Pled Antirust Claims ............................................. 27

   F.     Plaintiffs Allegations State a Claim For Intentional Infliction of Emotional Distress ................................................................................... 29

   G.     Plaintiffs Allegations State a Claim For Exemplary Damages ................. 30

V.     Plaintiffs Have Plead the Discovery Rule, Therefore No Statute of Limitations Applies ................................................................................. 30

Conclusion ........................................................................................................................ 30

# <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Aerojet-General Corp. v. Askew*, 511 F.2d 710 (5th Cir. 1975) ....................................13

*Allstate Ins. Co. v. Benhamou See*, 190 F. Supp. 3d 631 (S.D. Tex. 2016) ...................... 21, 24-26

*Allstate Ins. Co. v. Plambeck*, 802 F.3d 665 (5th Cir. 2015) .............................................22, 26, 27

*Apani Sw., Inc. v. Coca-Cola Enters., Inc.*, 300 F.3d 620 (5th Cir. 2002) ..................................28

*Baker v. Putnal*, 75 F.3d 190 (5th Cir. 1996) ..........................................................................1

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..........................................................................1

*Benson & Ford, Inc. v. Wanda Petroleum Co.*, 833 F.2d 1172 (5th Cir. 1987) ............... 12-13, 15

*Boltex Mfg. Co. v. Galperti, Inc.*, 828 Fed. Appx. 401 (5th Cir. 2020) ........................................16

*Boyle v. United States*, 556 U.S. 938 (2009) ...............................................................................24

*Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008).......................................................26

*Carl F Schier PLC v. Nathan (In re Capital Contracting Co.)*, 924 F.3d 890 (6th Cir. 2019) ...........................................................................................................................7

*Catalano, Inc. v. Target Sales, Inc.,* 446 U.S. 643 (1980)...........................................................27

*Doctor's Hosp. of Jefferson, Inc. v. Southeast Med. Alliance, Inc.,* 123 F.3d 301, 307 (5th Cir. 1997).......................................................................................................28

*Earl v. The Boeing Co.*, Civil Action 4:19-cv-507 (E.D. Tex. Sep. 3, 2021) ...............................26

*Elliot v. Foufas*, 867 F.2d 877 (5th Cir. 1989)...........................................................................20

*Ergobilt, Inc. v. Neutral Posture Ergonomics, Inc.*, 1998 WL 483624 (N.D. Tex. Aug. 10, 1998). .......................................................................................................5-7

*Eubanks v. FDIC*, 977 F.2d 166 (5th Cir. 1992).........................................................................13

*Fleischhauer v. Feltner*, 879 F.2d 1290 (6th Cir. 1989)..............................................................27

*Franchise Tax Board of California v. Alcan Aluminium Ltd.,* 493 U.S. 331 (1990)......................3

*Grider v. Keystone Health Plan Central, Inc.*, Civil Action No. 2001-CV-05641 (E.D. Pa. Sep. 18, 2003).................................................................................................25

*Gummow v. Splined Tools Corp.*, WL 2005 WL 1356438 (N.D. Tex. Jun. 7, 2005)...................13

*Harris Cnty. v. Eli Lilly & Co.*, CIVIL ACTION H-19-4994 (S.D. Tex. Sep. 29, 2020) ......................................................................................................... 24-26

*Hemi Group, LLC v. City of New York* , 559 U.S. 1 (2010) ..................................... 26-27

*Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438 (Tex. 2004) .........................29

*HT of Highlands Ranch, Inc. v. Hollywood Tanning Systems, Inc.*, 590 F. Supp. 2d 677 (D.N.J. 2008).................................................................................... 24-25

*In re Buccaneer Res., L.L.C Buccaneer Res., L.L.C.*, 912 F.3d 291 (5th Cir. 2019) ......................4

*In re S. Cent. States Bakery Prods. Antitrust Litig.*, 86 F.R.D. 407 (M.D. La. 1980) ...............................................................................................................28

*In re Reliance Acceptance Group, Inc.*, 235 B.R. 548 (D. Del. 1998) ...........................4

*In re Southmark Corp.*, 163 F.3d 925 (5th Cir. 1999) ..................................................14

*In re UAL Corp.*, 412 F.3d 775 (7th Cir. 2005) ..........................................................2, 8

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) ................6-9, 15-17

*Malvino v. Delluniversita*, CIVIL ACTION No. 2:12-CV-401 at * 26 (S.D. Tex. May 20, 2015)........................................................................................................27

*Meza v. General Battery Corp.*, 908 F.2d 1262 (5th Cir. 1990) ...................................13

*Moss v. Princip*, 913 F.3d 508 (5th Cir. 2019) .......................................................... 2-4

*Muenster Butane, Inc. v. Stewart Co.*, 651 F.2d 292 (5th Cir. 1981) ...........................27

*Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495 (5th Cir. 2000)..............17

*PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 15 F.3d 412 (5th Cir. 2010)........28

*R.A.G.S. Couture, Inc. v. Hyatt*, 774 F.2d 1350 (5th Cir. 1985).................................20

*Salinas v. United States*, 522 U.S. 52 (1997).......................................................... 20-21

*Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479 (1985) ..........................................20

*Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379 (5th Cir. 1996) ..................................17

*Shah v. VHS San Antonio Parts., L.L.C.*, 985 F.3d 450 (5th Cir. 2021).......................28

*Shippitsa Ltd. v. Slack*, 2019 WL 3304890 (N.D. Tex. Jul. 23, 2019) .................... 19-20

*Sosa v. Coleman*, 646 F.2d 991 (5th Cir. 1981)............................................................1

*Superior MRI Servs. v. All HealthCare Servs.*, 778 F.3d 502 (5th Cir. 2015)................................7

*Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559 (5th Cir. 2005) ........................................12

*Thorn v. Reliance Van Co., Inc.*, 736 F.2d 929 (3rd Cir. 1984). ......................................5-9, 16-17

*Tittle v. Enron Corp.*, 463 F.3d 410 (5th Cir. 2006) ......................................................................15

*TrafFix Devices, Inc. v. Mktg.Displays, Inc.*, 532 U.S. 23 (2001).................................................12

*United States v. Philip Morris USA*, 316 F. Supp. 2d 19 (D.D.C. 2004).......................................27

*United States v. Rashad*, 687 F.3d 637 (5th Cir. 2012) .................................................................23

*United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150 (1940).....................................................28

*United States v. Stalnaker*, 571 F.3d 428 (5th Cir. 2009) .............................................................22

*United States v. Turkette*, 452 U.S. 576 (1981) .......................................................................24-25

*Vaughn Medical Equip. Rep. Svc. v. Jordan Reses Supply*, CIVIL ACTION No.
    10-00124, SECTION: "C" (4) at *2 (E.D. La. Aug. 24, 2010)..........................................27-28

*Walker v. South Cent. Bell Tel. Co.*, 904 F.2d 275 (5th Cir. 1990) ..........................................29-30

**State Cases**

*Condom Sense, Inc. v. Alshalabi*, 390 S.W.3d 734 (Tex.App.—Dallas 2012, no
    pet.) ......................................................................................................................................... 8-9

*Cullum v. White*, 399 S.W.3d 173 (Tex.App.—San Antonio 2011, no pet.)................................18

*Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814 (Tex. 2005) ........................................................29

*In re Fisher*, 433 S.W.3d 523 (Tex. 2014).....................................................................................4

*In re Mem'l Hermann Hosp. Sys.*, 464 S.W.3d 686 (Tex. 2015). .....................................11, 28-29

*Lake v. Cravens*, 488 S.W.3d 867 (Tex. App.—Fort Worth 2016, no pet.) ...................................3

*Leyendecker Assocs., Inc. v. Wechter*, 683 S.W.2d 369 (Tex. 1984) ...........................................10

*Newspapers, Inc. v. Matthews*, 161 Tex. 284 (Tex. 1960) .................................................9-10, 17

*Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763 (Tex. June 19, 2020).......................................3-4

*Vice v. Kasprzak*, 318 S.W.3d 1 (Tex. App.—Houston [1st Dist.] 2009, pet.
    denied)........................................................................................................................................17

*Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*,
    434 S.W.3d 142 (Tex. 2014)..................................................................9

*Webre v. Sneed*, 358 S.W.3d 322 (Tex.App.—Houston[1st Dist.] 2011), aff'd 465 S.W.3d 169
    (Tex. 2015)....................................................................................2

*Wingate v. Hajdik*, 795 S.W.2d 717 (Tex. 1990).....................................3-4

## Statutes

11 U.S.C. § 326(a) .....................................................................5

11 U.S.C. § 362(a) .....................................................................2

15 U.S.C. § 1117(a) ....................................................................8

15 U.S.C. § 1125(a) ............................................................4-8, 16-17

18 U.S.C. § 1343 ....................................................................20-22

18 U.S.C. § 1503 .......................................................................20

18 U.S.C. § 1951 ...................................................................20, 23-24

18 U.S.C. § 1964 .......................................................................20

Tex. Civ. Prac. & Rem. Code §73.001. ..................................................9

**INTRODUCTION**

In 2016, the value of Plaintiffs' equity interest in Little River totaled several hundred million dollars, with some investment banks providing estimates in excess of $400 million. Today, Little River is in a liquidation bankruptcy, with Plaintiffs' equity value at, or approaching $0. BCBSTX's false statements to physicians, insurance companies, and regulators resulted in the diminished the value of Plaintiffs' equity in Little River. Stung by a one hundred and eight million dollar arbitration award proving some of its own wrongdoing, BCBSTX urges incorrect notions of standing in another premature attempt to evade liability for destroying Plaintiffs' business, commercial, and personal reputation. Plaintiffs' detailed First Amended Complaint (the "Complaint"), consisting of 111 paragraphs over 37 pages, shows how BCBSTX misled patients, physicians, and the public at large in a campaign to destroy Plaintiffs through false accusations of fraud and, as a result, are responsible for the closure of Little River's healthcare facilities. As Plaintiffs detail in the Complaint, in addition to losing their company, BCBSTX's statements cost them jobs and business opportunities. While Little River may also have standing to bring claims against BCBSTX, such claims do not deprive Plaintiffs of independent damages in their own right. BCBSTX complains that Plaintiffs only articulate some of BCBSTX's false and malicious statements, but conveniently ignoring two important facts: (1) only BCBSTX knows the extent of its false statements; and (2) Plaintiffs have no means to gain access to such statements other than discovery in this case—and **while this case has now been pending for more than a year, BCBSTX has yet to produce a single document**. In short, the Court should deny BCBSTX's premature attempt to secure dismissal of Plaintiffs' Complaint before BCBSTX ever has to provide the discovery it is trying so hard to hide.

**LEGAL STANDARDS**

Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted. *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981). The court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the

alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

<u>**ARGUMENT**</u>

**I.      Plaintiffs Own Their Claims Against BCBSTX**

BCBSTX argues Plaintiffs lack standing to bring any claims, other than a claim for intentional infliction of emotional distress because such claims allegedly belong to the Little River Bankruptcy Estate (the "Estate").[1]  However, the filing of a bankruptcy neither extinguishes equity interests nor impacts the ability of equity holders to sell, transfer, or otherwise encumber their equity holdings in the bankrupt entity.  As such, equity holders' claims concerning their equity interests are not impacted by the bankruptcy automatic stay (11 U.S.C. § 362(a)) and claims regarding the value of those equity holdings continue to belong to the equity holders, are not yielded to the bankruptcy estate.[2]

Here, Plaintiffs only seek their own independent damages and explicitly disclaim recovery of Estate damages such as lost profits, additional debt, or bankruptcy expenses.  While the Estate may have standing to bring claims based on the same wrongful behavior by BCBSTX, such hypothetical standing does not deprive Plaintiffs of standing to bring their own direct claims. *See Moss v. Princip*, 913 F.3d 508, 520 (5th Cir. 2019) ("the fact that an absent person could bring the action as a real party in interest does not of itself make that person a necessary or indispensable party.").  Standing for statutory causes of actions depends on statutory language, while standing for common law causes of action depends on the common law.  Plaintiffs have standing to bring all causes of action set forth in the Complaint as set forth below.

---

[1] Plaintiffs Downton, Borgfeld, the Kevin J. Owens Management Trust and the Jeff & Ashley Madison Family Trust (collectively, Madison Trust and the Owens Trust are the "Trusts") own 99% of the equity in Compass Pointe Holdings, LLC, which owns 100% of the equity in Little River Heatlhcare Holdings, LLC, which owns 100% of the equity in Rockdale Blackhawk, LLC d/b/a Little River Healthcare.  Contrary to BCBSTX's assertions, owners of the parent of a wholly owned subsidiaries are, for purposes of standing, owners of the subsidiary.  *Webre v. Sneed*, 358 S.W.3d 322, 333 (Tex.App.— Houston[1st Dist.] 2011, aff'd 465 S.W.3d 169 (Tex. 2015)) ("Webre, as a stockholder in Texas United, is also an equitable owner of stock in United Salt because Texas United owns all of the stock in United Salt.").

[2] The automatic stay cannot be used to stop a sale of equity interests because it is not an "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."  *In re UAL Corp.*, 412 F.3d 775, 778 (7th Cir. 2005) (vacating bankruptcy court injunction prohibiting sales of stock).

BCBSTX next argues that Plaintiffs do not have capacity to sue for lost equity value.  Dkt. 35, pp. 18-19 (Motion to Dismiss, pp. 10-11).  But the Fifth Circuit has ruled that arguments regarding a shareholder claim for lost equity value "goes not to standing, but simply to what damages a plaintiff may recover."  *Moss*, 913 F.3d 508 at n. 59 (citing *Lake v. Cravens*, 488 S.W.3d 867, 888 (Tex. App.—Fort Worth 2016, no pet.)).  *See also Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763, 776 (Tex. 2020) ("[W]e hold that a partner or other stakeholder in a business organization has constitutional standing to sue for an alleged loss in the value of its interest in the organization.").  As a result, BCBSTX's argument regarding ownership of Plaintiffs' damages requires resolution of disputed issues of fact and does not belong in a motion to dismiss.

Additionally, BCBSTX ignores the intentional use of the word "generally" by the Texas Supreme Court in discussing shareholder injuries: "**generally**, the individual stockholders have no separate and independent right of action for injuries suffered by the corporation which merely result in the depreciation of the value of their stock."  *Wingate v. Hajdik*, 795 S.W.2d 717, 719 (Tex. 1990).  But there is no legal bar on shareholder suits for lost equity value; this "'so-called shareholder standing' prohibition on suing to enforce corporate rights" is merely a "longstanding equitable restriction."  *Pike,* 610 S.W.3d at 776, quoting *Franchise Tax Board of California v. Alcan Aluminium Ltd.,* 493 U.S. 331, 336 (1990).  Further, an argument "that a shareholder may not sue for the corporation's injury does not attack [Plaintiffs]' injury in fact…. Indeed, [Plaintiffs] face a significant diminution in the value of their shares…" *Ensley v. Cody Resources, Inc.*, 171 F.3d 315, 319-20 (5th Cir. 1999) (concluding that arguments over shareholder standing are merely "prudential" issues).

The equitable prudential rule is "based on the principle that where such an injury occurs each shareholder suffers relatively in proportion to the number of shares he owns, and **each will be made whole if** the corporation obtains restitution or compensation from the wrongdoer." *Wingate,* 795 S.W.2d at 719 (emphasis added); *See also Pike*, 610 S.W.3d at 775 ("Ordinarily," a stockholder cannot recover damages "in the form of reduced stock value, because **all stockholders will be made whole** if the corporation obtains compensation") (emphasis added).  Here, the

3

Trustee has promised to give 70% of any Estate recovery from BCBSTX to the Estate's former secured creditor, Monroe Capital, without any carve-out addressing damages awarded based on lost equity value—an asset that, by definition, is not Estate property because it represents the remaining value in the company <u>after</u> all debts are paid.  *In re Little River Healthcare Holdings, LLC*, Case No. 18-60526-rbk, Bankr. W.D. Tex., Dkt. 973, p. 28, Ex. 2 ("Monroe Sharing Agreement").  A Bankruptcy Estate has no right to shareholder equity value and, therefore, no capacity to recover damages compensating shareholders for their loss.  But even if the Esetate could make such a claim, an award of damages for lost equity value *to the Estate* will not make Plaintiffs here whole.  Instead, 70% of that recovery will go to Monroe Capital, with unsecured creditors next in line.  Because a lawsuit by the Estate will not make Plaintiffs whole, they have "capacity to sue" under Texas common law for lost equity value under the equitable exception implicit in *Wingate* and *Pike*.  *Pike,* 610 S.W.3d at 776; *Wingate*, 795 S.W.2d at 719; *See also In re Reliance Acceptance Group, Inc.*, 235 B.R. 548 (D. Del. 1998) (affirming remand to state court of lawsuit for loss in equity value: "while the lawsuits filed by the Shareholders and by the Debtors may be against the same parties and may be based on the same or similar facts, they state different claims for relief…. And they seek to recover different damages. The Shareholders' claims are not derivative and do not belong to the corporation.").

Similarly, "individuals ha[ve] standing to assert claims for damages that accrued to them personally, even if they presented evidence of harm to their association as a whole." *Moss*, 913 F.3d 508 at n.59.  "This means that the estate and a creditor may have separate claims against a third party arising out of the same events."  *In re Buccaneer Res., L.L.C.*, 912 F.3d 291 (5th Cir. 2019).  In fact, the Texas Supreme Court has held that shareholders have standing based on allegations of "damages including 'loss of earning capacity, lost profits, loss of income, damage to credit reputation, lost investments,' and 'other losses,'" along with alleged injury to "character" and "mental anguish." *In re Fisher*, 433 S.W.3d 523, 527 (Tex. 2014).  Plaintiffs have standing to seek their independent damages here and have pled them in the Complaint.

4

**A.      Plaintiff Have Standing to Bring Lanham Act and Unfair Competition Claims**

The Lanham Act applies to "any person who believes that he is or is likely to be damaged" by the use of any "false description" or "misleading representation."   15 U.S.C. § 1125(a). Plaintiffs' clearly allege their commercial interests have been damaged by BCBSTX's actions— they have lost their company and their livelihoods—therefore, they have Lanham Act standing. Further, "[a] shareholder injured by false advertising directed at the corporation in which it owns stock does, in general, have standing under the Lanham Act" to sue for lost equity value, particularly when the targeted company is in bankruptcy.   *Ergobilt, Inc. v. Neutral Posture Ergonomics, Inc.*, 1998 WL 483624 at *2 (N.D. Tex. Aug. 10, 1998); *Thorn v. Reliance Van Co., Inc.*, 736 F.2d 929 (3rd Cir. 1984).   This holding makes sense because a bankruptcy trustee represents secured and unsecured creditors, not equity holders; indeed, the bankruptcy trustee's fee explicitly excludes any equity recovery.   11 U.S.C. § 326(a).   Equity holders are free to sell their equity interests in the bankrupt entity while the bankruptcy is pending and equity holders can seek recovery of damages from any third-party conduct that diminishes the value of their equity interests.

This case mirrors the Third Circuit decision in *Thorn*.   *Thorn*, 736 F.2d 929.   In *Thorn*, the plaintiff (Thorn) was the president and chief executive officer of Florida Eastern Van Lines, Inc. ("Florida-Eastern") and also owned 45% of its stock.   *Id.*   Thorn alleged that another entity used a Florida-Eastern slogan in advertisements, causing injury to Florida-Eastern leading to its bankruptcy.   *Id.*   Thorn sued for his lost equity value.   *Id.*   The district court dismissed Thorn's claim with a finding that he did not have individual standing to pursue them.   *Id.*, at 933.

The sole issue on the appeal to the Third Circuit was "whether Thorn as an individual investor has standing to maintain an action under section 43(a) of the Lanham Act."   *Id.*, at 931. In other words, does "an investor fall[] within the class of non-competitors entitled to bring an action."   *Id.*, at 931-32.   The Third Circuit concluded an investor falls within that protected class because "the plain language of the statute gives Thorn, a noncompetitor, the right to sue for harm caused by the false representation of services in commerce."   *Id.*, at 933.   Further, "Thorn in his

capacity as an investor has alleged sufficient direct injury resulting from the false advertisements of the defendants and through these allegations has demonstrated a reasonable interest to be protected under section 43(a)." *Id.* Therefore, the Third Circuit reversed the dismissal of Thorn's claims. *Id.* Plaintiffs' allegations here mirror those in *Thorn* as, like Thorn, Plaintiffs are investors who lost the value of their investment due to BCBSTX's actions.

In 2016, Little River's equity value totaled several hundred million dollars, with some investment banks providing estimates in excess of $400 million.  Today, Little River is in a liquidation bankruptcy, with equity value at, or approaching $0.  BCBSTX's false statements to physicians, insurance companies, and regulators damaged Little River's reputation, resulting in the diminished the value of Plaintiffs' equity in Little River.  BCBSTX argues that Plaintiffs are not within the zone of interests protected by the Lanham Act and, as a result, have no standing under *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014).  However, *Lexmark* did not overrule Thorn.  Rather, like Thorn, plaintiffs fall "within the class of plaintiffs whom Congress has authorized to sue under § 1125(a)" because they have alleged "an injury to a commercial interest in reputation"—loss of equity value in Little River arising from BCBSTX's damage to Little River's reputation and commercial interests.  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014).

In reply, BCBSTX may argue that this case is different from *Thorn* because the Estate has also asserted its own action against BCBSTX.  In addition to the fact that the Estate is not bringing a Lanham Act claim, there are at least two other problems with BCBSTX's argument, either of which would be sufficient to deny BCBSTX's motion to dismiss.

First, an argument that a non-party is in a "better" position to bring claims is an argument about "prudential standing," as recognized by the Northern District of Texas:

> "A shareholder injured by false advertising directed at the corporation in which it owns stock does, in general, have standing under the Lanham Act. Where the corporation is capable of protecting its own interests, however, there may be 'prudential reasons' to deny standing."

*Ergobilt*, 1998 WL 483624 at \*2.  However, a few years after *Ergobilt*, in *Lexmark*, the U.S.

Supreme Court decried the practice of denying standing for "prudential" reasons in Lanham Act cases, specifically holding that the availability of "more direct plaintiffs" was not an appropriate basis on which to deny standing. *Lexmark*, 572 U.S. at 123, 128. As in this case, the *Lexmark* defendant moved to dismiss plaintiff's claims for lack of standing and the district court granted the motion, ruling that the plaintiff lacked "prudential standing" because the plaintiff's harm was only a "byproduct" of harm to other persons. *Id.*, at 1387. The Supreme Court reversed, holding that "prudential standing" was not a proper consideration in a Lanham Act claim because a court "cannot limit a cause of action that Congress has created merely because 'prudence' dictates" *Id.*, at 1398; *See also Carl F Schier PLC v. Nathan (In re Capital Contracting Co.)*, 924 F.3d 890, 896 (6th Cir. 2019) (Courts "lack a 'prudential' license to close the courthouse doors when the statutory text has opened them."). Rather, the Court was required "to determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Lexmark*, 572 U.S. at 1387. Plaintiffs have standing under the plain language of the Lanham Act as BCBSTX's actions had a direct impact on the value of their equity interests. Even if Little River's profitability had not declined due to BCBSTX's actions, the reputational harm caused by BCBSTX eliminated Plaintiffs ability to secure a willing partner to acquire their equity interest in Little River.

Second, even if the Court could consider prudential standing, it would not bar Plaintiffs' claims here.[3] With respect to the prudential standing of equity holders, the Northern District ruled that "shareholders should be denied standing where the corporation is able to take action that would effectively compensate them as well." *Ergobilt*, 1998 WL 483624 at *2. Here, the "prudential reasons" in *Ergobilt* do not apply because a victory by the Estate will not "effectively compensate [Plaintiffs] as well" as this independent lawsuit. *Id.* Specifically, the Monroe Sharing Agreement gives away 70% of any money recovered by the Estate from BCBSTX. *In re Little River*

---

[3] BCBSTX also cites *Superior MRI Servs. v. All HealthCare Servs.*, 778 F.3d 502, 506 (5th Cir. 2015) as a Lanham Act case, but the only claim at issue was tortious interference, not violation of the Lanham Act. Regardless, *Superior MRI* does not control as Plaintiffs are asserting their own rights in this action, both as equity holders and as to other damage to commercial reputation. *See Thorn*, 736 F.2d 929; *Ergobilt*, 1998 WL 483624.

*Healthcare Holdings, LLC*, Case No. 18-60526-rbk, Bankr. W.D. Tex., Dkt. 973, p. 28, Ex. 2. Therefore, the Estate is unable to protect the interests of Little River shareholders as only 30% of any recovery from BCBSTX will be available to pay Little River's unsecured creditors, let alone equity holders.  Damage for lost equity value belongs to equity holders, not the Estate and allowing the Estate to pursue such claims would improperly transfer 70% of that equity recovery to Monroe Capital.  *See In re UAL Corp.*, 412 F.3d at 778 ("bankruptcy is not supposed to appropriate some investors' wealth for distribution to others").  On the other hand, other damages to Little River, such as lost profits and increased debt, belong to the Estate—Plaintiffs have already expressly disclaimed those items of damage.  *See* Dkt. 32, p. 28, (Complaint, n. 48).

Additionally, the individual Plaintiffs' claims under the Lanham Act include "injury to a commercial interest in reputation" beyond lost Little River equity value.  *Lexmark*, 572 U.S. at 128.  As the owners and officers of Little River Healthcare, Plaintiffs' personal business reputation and future business opportunities were damaged by BCBSTX's false statements about Little River.  BCBSTX's false accusations of fraud damaged Plaintiffs' reputation for providing their managerial services to physicians and hospitals, making it more difficult to obtain work, and causing a reduction in their income.  The stain on Plaintiffs' reputation will remain forever despite the recent Arbitration award against BCBSTX—proving that BCBSTX's allegations of fraud against Little River were false.

Moreover, Plaintiffs also separately seek disgorgement of BCBSTX's profits resulting from its false advertising.  When a plaintiff proves a violation under 15 U.S.C. § 1125(a) of the Lanham Act, he is entitled "to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action."  15 U.S.C. § 1117(a).  By making false statements about Little River and other rural hospitals, BCBSTX forced such hospitals out of the laboratory business and/or forced such hospitals to close.  Plaintiffs also have independent standing to bring Lanham Act claims for disgorgement of profits based on BCBSTX's false statements.

In short, as in *Thorn*, Plaintiffs have a direct claim under the Lanham Act for destruction of their equity value in Little River and the individual Plaintiffs have a claim under the Lanham

Act for damage to their personal commercial reputations.    Because Plaintiffs have Lanham Act standing, they also have standing to bring common law unfair competition claims: "[T]he Texas common law elements of unfair competition, including trademark, are no different than those under federal trademark law. Courts therefore look to the Lanham Act and cases thereunder for generally accepted principles of substantive trademark law and to discern meaning and interpretation of the state law provisions." *Condom Sense, Inc. v. Alshalabi*, 390 S.W.3d 734, 738 (Tex.App.—Dallas 2012, no pet.) (internal citations omitted). Lastly, whether BCBSTX competes with Little River and/or Plaintiffs is irrelevant to either claim as "there need be no competition in unfair competition." *Lexmark*, 572 U.S. at 138.

### B.    Plaintiffs Have Standing to Bring Defamation and Business Disparagement Claims

Plaintiffs also have standing to bring defamation and business disparagement claims. Under Texas law, statements falsely accusing a company of fraud are deemed statements about the company's owners and cause direct damage to the **owner** of the company: "[l]ibelous writings, by innuendo, may tend to injure **the reputation of an owner** and to expose him to public hatred. Such writings may also tend to injure the owner financially through a loss or reduction in business. In each case, **recovery of the two elements of damages will be for defamation of the owner**." *Newspapers, Inc. v. Matthews*, 339 S.W.2d 890, 893 (Tex. 1960) (emphasis added).

BCBSTX concedes that a defamation claim belongs to the owner of a business, not the business itself.  Dkt. 35, p. 24 (Motion to Dismiss, p. 16).   The Texas Supreme Court recently identified *Newspapers* as "[o]ur most instructive piece on the distinction between the owner and the business." *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 151 n.35 (Tex. 2014).  As in *Newspapers,* it is the individual owners of Little River that have been exposed to "public hatred" due to the hospital closures resulting from BCBSTX's allegations, given them ownership of defamation claims against BCBSTX.

Texas law is also clear that while a "corporation" may be defamed, a "business," such as a limited liability company, may not. *Newspapers*, at 339 S.W.2d at 893 ("[T]he very wording of

the libel statute precludes its application to a business.")  In fact, the Texas libel statute limits its application to a "living person." TEX. CIV. PRAC. & REM. CODE §73.001.  Little River has no ability to sue for liable—rather that claim accrues to the benefit of the Little River equity holders.  That is particularly true here because a company cannot commit fraud absent fraudulent actions by individuals.  Plaintiffs have alleged that any accusations of fraud against Little River would be attributed to them as the publicly known owners of Little River.  Dkt. 32, p. 27 (Complaint, ¶ 70). Under Texas law, "it is not necessary that the individual be referred to by name if those who knew and were acquainted with the plaintiff[s] understand from reading the publication that it referred to plaintiff." *Newspapers*, 339 S.W.2d at 894.

Under *Newspapers* and its progeny, Plaintiffs have standing to bring claims for general damages (for loss of reputation and mental anguish) and special damages (such as job loss, difficulty finding new work, and loss of investment opportunities).  Dkt. 32, p. 27 (Complaint, ¶ 70).  Plaintiffs have alleged four specific injurious statements by BCBSTX and, as this is a motion to dismiss, Plaintiffs' allegations must be taken as true.  Dkt. 32, p. 26 (Complaint, ¶ 65).  "Once injury to reputation is established, a person defamed may recover general damages without proof of other injury." *Leyendecker Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 374 (Tex. 1984). Therefore, Plaintiffs have alleged general damages sufficient to defeat a motion to dismiss.  With respect to special damages, Plaintiffs have alleged: (1) BCBSTX forced Little River into bankruptcy, preventing Plaintiffs from selling their equity interests in Little River and diminishing the value of their interests; (2) Plaintiffs lost jobs and had difficulty finding new work; and (3) Plaintiffs lost investment opportunities.  Dkt. 32, pp. 27-28 (Complaint, ¶¶ 70-73).  Plaintiffs have properly alleged special damages and, at this point in the proceedings, have no obligation to prove the precise dollar amount of their damages, which are still accruing and will be the subject of expert testimony.

### C.      Plaintiffs Have Standing to Bring Tortious Interference Claims

Plaintiffs allege "[t]he plans to build the Georgetown Surgery Center were aborted due to the malicious and intentional acts of BCBSTX, which were done with an intent to prevent Plaintiffs

and Little River from expanding and building new relationships with physicians." Dkt. 32, p. 32 (Complaint, ¶ 90). Plaintiffs further allege they would have been "key investors" in the Georgetown Surgery Center. *Id.* Plaintiffs are not seeking to recover Little River's damages as operator of the Georgetown Surgery Center, but their own individual damages as investors in the Georgetown Surgery Center. Therefore, Plaintiffs have standing to bring their tortious interference claim. Further, BCSBTX has tactically stonewalled any discovery to determine the depths of BCBSTX's wrongful conduct, denying Plaintiffs the opportunity to discover even further evidence supporting additional claims for tortious interference with prospective business relations.

        **D.**     **Plaintiffs Have Standing to Bring RICO Claims**

BCSBTX does not challenge Plaintiffs' standing to bring RICO claims, other than through a challenge to the sufficiency of Plaintiffs' pleadings, which is addressed below.

        **E.**     **Plaintiffs Have Standing to Bring Anti-Trust Claims**

To pursue an antitrust claim, a plaintiff must show "antitrust injury," which is an "injury of the type the antitrust laws were designed to prevent and that flows from that which makes defendants' acts unlawful." *Norris v. Hearst Tr.*, 500 F.3d 454, 465 (5th Cir. 2007). The gravamen of Plaintiffs' anti-trust claim is that "BCBSTX improperly directed and/or conspired with all other major insurance companies in Texas to target rural hospitals for rate reductions, constituting an illegal act of price fixing. This price fixing behavior put downward pressure on wages for rural hospital employees." Dkt. 32, p. 35 (Complaint, ¶ 102).

Antitrust laws apply to the labor market and prevent companies from suppressing wages through improper actions. *See  Brown v. Pro Football, Inc*., 50 F.3d 1041, 1060 (D.C. Cir. 1995) (citing *Radovich v. National Football League,* 352 U.S. 445 (1957)). Here, Plaintiffs have alleged that the price fixing activity of the Blue Cross Cabal reduced payment rates to rural hospitals, putting downward price pressure on payments to participants in the rural hospital labor market as an "anticompetitive effect" of price fixing between BCSBTX and other members of the Blue Cross Cabal. *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc*., 429 U.S. 477, 498 (1977). The Blue Cross Cabal's price fixing activity has limited wages throughout the rural hospital labor "market in

general," not just in connection with Little River, affecting far more individuals than just the Plaintiffs in this case. *In re Mem'l Hermann Hosp. Sys.*, 464 S.W.3d 686, 709 (Tex. 2015). Additionally, contrary to BCBSTX's position, Plaintiffs' inability to find new jobs at comparable salary levels is not at all derivative of BCBSTX's separate harm to Little River because Plaintiffs could have sought new jobs even *if* Little River remained in business. Therefore, Plaintiffs have pled anti-trust injury and have anti-trust standing.

## II.    *Res Judicata* Does Not Bar Plaintiffs' Claims

As an initial matter, BCSBTX's motion based on *res judicata* is premature at best: "a *res judicata* contention cannot be brought in a motion to dismiss; it must be pleaded as an affirmative defense." *Test Masters Educ. Serv., Inc. v. Singh*, 428 F.3d 559, n.2 (5th Cir. 2005), *abrogated on other grounds by TrafFix Devices, Inc. v. Mktg.Displays, Inc.*, 532 U.S. 23 (2001). However, even if it were somehow appropriate for consideration at this stage of litigation, which it is not, *res judicata* does not apply. "The test for res judicata has four elements: (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions." *Id.*, at 571 (5th Cir. 2005). Neither element one, nor element four applies in this case, precluding dismissal based on *res judicata*. Additionally, *res judicata* is inappropriate here because Little River "could not" have brought Plaintiffs' individual claims in the Arbitration.

### A.    Plaintiffs And Little River Are Not In Privity

Despite BCBSTX's attempt to gloss over the first element, Plaintiffs and Little River are neither identical nor in privity. It is axiomatic that Plaintiffs (individual equity holders) are not identical to Little River (a now bankrupt entity); therefore, BCBSTX must affirmatively and conclusively prove privity between Plaintiffs and Little River as part of the affirmative defense of res judicata.

BCSBTX appears to argue Little River was Plaintiffs' "virtual representative" in the Arbitration (Motion to Dismiss, pp. 11-12), possibly eschewing use of the term "virtual

representative" in recognition of its inapplicability here.

The question of virtual representation is one of fact and is to be kept within "strict confines." *Benson & Ford, Inc. v. Wanda Petroleum Co.*, 833 F.2d 1172, 1175 (5th Cir. 1987). Virtual representation requires "an express or implied legal relationship between the party and the nonparty in which the party to the first suit is accountable to the non-party who files a subsequent suit raising identical issues." *Id*., at 1174-75 (internal quotations omitted). "This requires more than a showing of parallel interests—it is not enough the non-party may be interested in the same questions or proving the same facts." *Eubanks v. FDIC*, 977 F.2d 166, 170 (5th Cir. 1992). Here, while Plaintiffs are interested in "proving the same facts" as Little River, a bankruptcy debtor, such as Little River cannot function as their "virtual representative" because the Estate has no accountability to Plaintiffs. *See Meza v. General Battery Corp.*, 908 F.2d 1262, 1264 (5th Cir. 1990) (no virtual representation where party in prior action had no contractual duty or statutory obligation to represent nonparty); *Gummow v. Splined Tools Corp.*, WL 2005 WL 1356438 (N.D. Tex. Jun. 7, 2005) (no duty of accountability between plaintiff and former litigant; therefore, no virtual representation). Specifically, the Estate is under the control and direction of the Trustee. While Plaintiffs were the owners of Little River, they had no ability to direct the Arbitration and no means to hold the Estate accountable as required for virtual representation. *Id.* Therefore, Plaintiffs have no privity with the Estate for *res judicata* purposes.

Additionally. the question of "whether a party's interests in a case are virtually representative of the interests of a nonparty is one of fact…." *Aerojet-General Corp. v. Askew*, 511 F.2d 710, 719 (5th Cir. 1975). In this case, the trier of fact will be a jury.

**B.  This Lawsuit Does Not Involve the Same Claims as the Arbitration**

Even *if* Plaintiffs were in privity with the Little River Estate, the *res judicata* defense still fails because the lawsuit does not involve the same claims as the Arbitration. The Arbitration centered around BCBSTX's breach of contract and causes of actions arising out of that breach including violations of the Texas Prompt Payment Laws and the Texas Free Enterprise and

Antitrust Act.[4]  Little River did not bring claims for violations of the Lanham Act, defamation, business disparagement, unfair competition, or RICO violations.  Little River also did not bring an anti-trust claim with respect to the labor market for individuals (for which it would not have had standing).

BCBSTX correctly notes that the Fifth Circuit follows the transactional test for *res judicata* purposes and must, therefore examine whether the claims in this lawsuit arise from "the same nucleus of operative facts" as the claims in the Arbitration.  *In re Southmark Corp.*, 163 F.3d 925, 934 (5th Cir. 1999).  Little River's breach of contract claim sought damages for unreimbursed healthcare services rendered between 2015 and May of 2017—when BCBSTX ended its prepayment review audit of Little River and resumed paying Little River's claims.  *Little River v. BCBSTX*, Case No. 20-06006-rbk, Bankr. W.D. Tex., Dkt. 1-1, p. 68 (Final Award, ¶ 140).  In contrast, Plaintiffs' claims in this case generally focus on statements made by BCBSTX in the Summer of 2017 (e.g., the HFPPS presentation, the email to United, and the emails to CMS)— well after the time period involved in the contractual breach.  Indeed, Judge King recently denied BCBSTX's Motion to Dismiss Little River's lawsuit against it based on the same asserted *res judicata* affirmative defense.  *Studensky v. Blue Cross and Blue Shield of Texas*, Case No. 20-06095, (Bankr. W.D. Tex., April 22, 2021), Dkt. 84.  If *res judicata* does not even apply to Little River's new lawsuit based on its own claims decided in its own Arbitration, it is unclear how *res judicata* could possibly apply to Plaintiffs, particularly at this preliminary pleading stage.

### C.   Little River "Could Not and Should Not" Have Brought Additional Claims in Arbitration

Additionally, Little River did not, and could not, have brought any of Plaintiffs' claims in the Arbitration.  First, many of Plaintiffs' damages are uniquely personal, such as lost jobs, lost employment opportunities, lost investment opportunities, emotional distress, and/or lost opportunity to sell their membership interests.  The Estate never asserted any such claims, did not

---

[4] Little River also made claims for violations of Chapters 541 and 542 of the Texas Insurance Code and the Texas Deceptive Trade Practices Act.  None of those claims were adjudicated on the merits as Insurance Code claims were dismissed for lack of standing and Little River withdrew its DTPA claim.

suffer any such damages, and had no standing to assert such claims.  Little River also lacked standing to pursue claims against BCBSTX for anti-trust impact on *individuals* in the rural healthcare labor market.  Further, Plaintiffs were not signatories to the arbitration agreement and had no right or ability to intervene in the Arbitration, but even if they had, "a nonparty is not obliged to seize an available opportunity to intervene in pending litigation that presents question affecting the nonparty. . . ."  *Benson*, 833 F.2d at 1176.

Second, the claims at issue in this lawsuit: Lanham Act, defamation, business disparagement, unfair competition, RICO, and intentional infliction of emotional distress were not subject to the Arbitration agreement between BCBSTX and Little River, which was limited to "any contract interpretation or claim issue."  Dec. 15, 2003 PPO Contract Between Little River and BCBSTX, p. 5, Article 11(A).  In the Fifth Circuit, "[a] dispute 'arises out of or relates to' a contract if the legal claim underlying the dispute could not be maintained without reference to the contract."  *Tittle v. Enron Corp.*, 463 F.3d 410, 422 (5th Cir. 2006).  Here, none of Plaintiffs' claims require reference to the contracts between BCBSTX and Little River.  Indeed, the Complaint merely refers to the contracts to set forth the procedural history between the BCBSTX and Little Rive and to note that "BCBSTX's breach of the contracts has already been conclusively determined and is not at issue in this proceeding."  Dkt. 32, p. 12 (Complaint, n.19).  None of Plaintiffs' causes of actions reference the contracts and BCBSTX's false statements and other tortious behavior exist apart from the contracts.

## III.    Plaintiffs' Claims Are Not Factually Deficient

### A.    Plaintiffs' Allegations State a Cause of Action Under the Lanham Act[5]

BCBSTX next asserts a misguided factual attack on the sufficiency of Plaintiffs' Lanham Act claims.  The Lanham Act (15 U.S.C. § 1125(a)) applies when a party disparages the commercial activities of another party in connection with "any goods or services."  15 U.S.C. §

---

[5] In the same section of its Motion to Dismiss, BCBSTX also argues Plaintiffs failed to adequately plead their unfair competition claim, but their only argument is an allegation that such claim is time-barred.  Dkt. 35, p. 22 (Motion to Dismiss, p. 14).  As set forth below, because Plaintiffs have pled the discovery rule, limitations are not an appropriate ground on which to seek dismissal of any claims.

1125(a).  "[A]ny person who believes that he or she is or is likely to be damaged by such act" has standing to bring a claim, even if the plaintiff "plaintiff merely suffered collateral damage" and was not the target of the disparaging statements.  *Lexmark*, 572 U.S. at 138.  The defendant does not have to be a competitor of the disparaged party to be liable under the Lanham Act.  *Id.*

> "To establish a prima facie case of false advertising under Section 43(a), the plaintiff must show: (1) a false or misleading statement of fact about a product; (2) the statement was deceptive; (3) the deception is material; (4) the product is in interstate commerce; and (5) Plaintiff has been or is likely to be injured as a result of the statement at issue."  *Boltex Mfg. Co. v. Galperti, Inc.*, 828 Fed. Appx. 401, 406 (5th Cir. 2020).

Plaintiffs have properly plead all five elements.  BCBSTX disputes only element 1.

Even so, BCBSTX does not dispute that Plaintiffs plead "false or misleading statements of fact about a product;" rather, BCBSTX alleges that such statements were not made "in commercial advertising or promotion."  In its argument, BCBSTX appears to correctly concede that false statements made to physicians and insurance companies about Little River constitute commercial speech.  Yet, BCBSTX argues that such commercial speech is insufficient under the Lanham Act because Plaintiffs "have not alleged and cannot allege facts to show BCBSTX, a managed care company, was in competition with Plaintiffs."  Dkt. 35, p. 23 (Motion to Dismiss at p. 15).  There are at least three problems with BCBSTX's position.

First, Plaintiffs may purse a Lanham Act claim (as distinct from a defamation or business disparagement claim) based on their damage arising out of BCBSTX's false statements against Little River; they need not prove the false statements referred to the individual Plaintiffs.  *Thorn*, 736 F.2d 929.

Second, BCBSTX conveniently overlooks the express allegation in Plaintiffs' Complaint that "BCBSTX began competing with hospitals [and Plaintiffs] by employing physicians in Texas, with plans to open at least 10 primary care practices in 2020"  Dkt. 32, p.9 (Complaint, ¶25).  Plaintiffs have alleged that BCBSTX is competing with in the physician employment market, defeating any motion to dismiss on that basis.

Third, and most importantly, Plaintiffs may properly pursue a Lanham Act claim without

*any* allegation of competition.  The case on which BCBSTX relies, *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379 (5th Cir. 1996), was abrogated by the Supreme Court in *Lexmark*, ruling that the Lanham Act applies to non-competitors:

> "When a defendant harms a plaintiff's reputation by casting aspersions on its business, the plaintiff's injury flows directly from the audience's belief in the disparaging statements. Courts have therefore afforded relief under § 1125(a) not only where a defendant denigrates a plaintiff's product by name, but also where the defendant damages the product's reputation…. [W]hen a party claims reputational injury from disparagement, **competition is not required for proximate cause**." *Lexmark*, 572 U.S. at 138 (emphasis added).

Here, Plaintiffs claim "reputational injury" from BCBSTX's disparagement, so it is irrelevant whether or not BCBSTX is in competition with either Little River or Plaintiffs.  In the words of Justice Scalia, "there need be no competition in unfair competition." *Id.*; *See also Thorn*, 736 F.2d at 933 ("We thus find that the mere fact that Thorn is not a competitor of Reliance does not, in and of itself, preclude him from bringing suit under section 43(a).").  Because actions attacking another business are actionable under the Lanham Act when their purpose is to damage another's product or service, Plaintiffs are not required to show that BCBSTX intended to induce to consumers to purchase anything from BCBSTX.[6]

### B.   Plaintiffs Allegations State Claims For Defamation and Business Disparagement

BCBSTX's argues for dismissal of Plaintiffs' defamation and business disparagement claims solely by claiming that BCBSTX merely defamed Little River, not each individual Plaintiff. Dkt. 35, p. 25 (Motion to Dismiss, p. 17).  BCSBTX argues, "to sustain a disparagement action, a plaintiff must be referenced in the complained-of statement," citing *Vice v. Kasprzak*, 318 S.W.3d 1, 13–14 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).  Dkt. 35, p. 25 (Motion to Dismiss, p. 17).  Yet the decision in *Vice* actually supports Plaintiffs claims by noting that:

> "A publication is 'of and concerning the plaintiff' if persons who knew and were acquainted with him understood from viewing the publication that the defamatory matter referred to him.  **It is not necessary that the plaintiff be specifically**

---

[6] BCBSTX mistakenly cites a twenty-year old, outdated, pre-*Lexmark* standard rather than current law.  Dkt. 35, p. 23 (Motion to Dismiss, p. 15), citing *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495 (5th Cir. 2000).

**named in the communication to be defamatory**, but it must be clear to those who know and are acquainted with him that the defamatory statement is directed to him. The plaintiff need not prove that the defendant intended to refer to him." *Vice*, 318 S.W.3d at 13 (citing *Newspapers*, 161 Tex. at 289-290) (emphasis added).

As set forth in *Vice*, BCBSTX's statements accusing Little River of fraud were recognized by persons who know and are acquainted with Plaintiffs that the defamatory statements were directed to them. *See also Cullum v. White*, 399 S.W.3d 173, 182-183 (Tex.App.—San Antonio 2011, no pet.) ("As to the website, it included information that anyone acquainted with White would understand it referred to the Ranch and infer it related to White," even though the website concerned White's business and White was never mentioned by name.).  The Complaint includes multiple factual allegations supporting its claims that "anyone who knew any of the individual Plaintiffs would equate statements accusing Little River of fraud with statements accusing each individual Plaintiff of committing fraud." Dkt. 32, p. 30 (Complaint, ¶ 79).  For instance, Plaintiffs alleged:

- "Madison was generally recognized as the face of Little River."

- "Downton was publicly associated for the Little River brand and regularly served as its spokesperson in media interviews, including interviews about the dispute with BCBSTX."

- "Owens was widely known as the founder of Little River." Dkt. 32, p. 27 (Complaint, ¶ 70).

Further, Plaintiffs' allegations surrounding BCBSTX's negligence, bad faith, or malice are not conclusory.  For instance, when discussing BCBSTX's presentation to other insurers accusing Little River of fraud, communications with CMS, and communications with elected officials, Plaintiffs' allege that, **BCBSTX knew its allegations of fraud were false before it engaged in such communications**:

"several BCBSTX employees investigated the claim denials and realized that medical records demonstrated that the tests had, in fact, been performed in Rockdale—meaning BCBSTX's denials were in error. Yet, rather than correct the error and pay Little River's claims, BCBSTX doubled down and accused Little River of fraud." Dkt. 32, p. 12 (Complaint, ¶ 34).

With respect to privilege, Plaintiffs pled that no privilege exists because BCBSTX's statements were made in bad faith and/or with malice. Dkt. 32, pp. 13, 26 (Complaint, ¶ 35, ¶ 66).

**C.      Plaintiffs Allegations State a Claim For Tortious Interference**

The elements of tortious interference with prospective business relationships are "(1) a reasonable probability that the plaintiff would have entered into a business relationship; (2) an independently tortious or unlawful act by the defendant that prevented the relationship from occurring; (3) the defendant did such act with a conscious desire to prevent the relationship from occurring or the defendant knew the interference was certain or substantially certain to occur as a result of the conduct; and (4) the plaintiff suffered actual harm or damages as a result of the defendant's interference." *Shippitsa Ltd. v. Slack*, 2019 WL 3304890 at *13 (N.D. Tex. Jul. 23, 2019).

Plaintiffs allege that they were going to be "key investors" in the Georgetown Surgery Center, which was "designed as a joint venture with physicians." Dkt. 32, pp. 14, 32 (Complaint ¶ 36, ¶ 90). As such, Plaintiffs have alleged the Georgetown Surgery Center as the relevant business relationship and identified physicians as the third-parties with whom they intended to contract in the "joint venture." Plaintiffs' identification of Little River's physician partners generally, without inclusion of individual names, is sufficient to defeat a motion to dismiss. *See Shippitsa*, 2019 WL 3304890 at *13 (motion to dismiss denied due to allegation that a number of unidentified consumers "clicked on an advertisement").

Perplexingly, BCBSTX somehow argues that "Plaintiffs have not alleged any ***intentional interference*** by BCBSTX related to any prospective relationship between themselves and a third party." Dtk. 15, p. 27 (Motion to Dismiss, p. 21). In fact, Plaintiffs expressly allege BCBSTX intentionally interfered in their relationships with physicians, which were necessary for Plaintiffs to: (1) sell their equity at a profit; and (2) build the Georgetown Surgery Center:

> The plans to build the Georgetown Surgery Center were aborted due to the **malicious and intentional acts of BCBSTX**, which were done with an intent to prevent Plaintiffs and Little River from expanding and building new relationships with physicians. Dkt. 32, p. 32 (Complaint, ¶ 90) (emphasis added).

BCBSTX knew about Little River's desire to expand its physician relationships and its "conscious desire" to prevent Little River from doing so, including building a surgery center, constitutes the

"intent element" necessary to a properly pled claim for tortious interference with prospective business relationships. *Shippitsa*, 2019 WL 3304890 at *13.

### D.     Plaintiffs Allegations State a Civil RICO Claim

RICO authorizes a cause of action by "[a]ny person injured in his business or property by reason of a violation of" the statute.  18 U.S.C. § 1964(c).  A plaintiff must allege an injury caused by "(1) the conduct (2) of an enterprise (3) through a pattern of (4) racketeering activity." *Elliot v. Foufas*, 867 F.2d 877, 880 (5th Cir. 1989).  "The scope of the civil RICO statute is breathtaking" (*R.A.G.S. Couture, Inc. v. Hyatt*, 774 F.2d 1350, 1355 (5th Cir. 1985)) and "RICO is to be read broadly" so as to deter potential violators.  *Sedima*, *S.P.R.L. v. Imrex Co.*, *Inc.*, 473 U.S. 479, 496 (1985).  BCSBTX argues Plaintiffs failed to allege: (1) predicate acts; (2) a RICO "enterprise;" and (3) proximate cause of damages.  However, "[e]valuating RICO's statutory-standing elements is a fact-intensive inquiry that necessitates case-specific considerations," and therefore, not generally suited to disposition in a motion to dismiss.

#### 1.     Plaintiff Pled Predicate Acts

Plaintiffs alleged:

> "[T]he Blue Cross Cabal began a nationwide enterprise to avoid its contractual obligations to hospitals.  BCBSTX created a strategy of inappropriately using regulators as leverage against hospitals in payment negotiations. BCBSTX also reported hospitals to the federal government as committing fraud to create leverage in negotiations over new contracts and money owed for past services and communicated its strategy to other members of the Blue Cross Cabal."  Dkt. 32, p. 15 (Complaint, ¶ 38).

In furtherance of the enterprise, Plaintiffs have pled that BCBSTX and its co-conspirators committed predicate acts under 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 1951 (threats of extortion), and 18 U.S.C. § 1503 (corrupt influence).[7]   Plaintiffs must merely identify two

---

[7] 18 U.S.C. § 1503 applies to anyone who "corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice."  18 U.S.C. § 1503.  In its conversations with Plaintiffs, BCBSTX implied that it was aware of present judicial proceedings and the Complaint alleges that BCBSTX took actions to influence them through communications between its Special Investigations Department and the FBI.  Complaint, ¶ 48.  Due to BCBSTX's obstruction, Plaintiffs have not yet been able to obtain any discovery from BCBSTX, and as a result, do not yet have direct evidence to support predicate acts under 18 U.S.C. §1503.  However, the multiple predicate acts identified in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 1951 are more than sufficient to defeat a motion to dismiss.

predicate acts (by any member of the Blue Cross Cabal) to survive a motion to dismiss. *Salinas v. United States*, 522 U.S. 52, 66 (1997).  Plaintiffs identify numerous predicate acts in furtherance of the BCBSTX scheme and summarize the allegations with nine bullet points in Paragraph 96.

### a.   The Blue Cross Cabal Violated 18 U.S.C. § 1343 (Wire Fraud)

With respect to wire fraud, Plaintiffs summarized twelve predicate acts of wire fraud in paragraph 51 of the Complaint,[8] with each of those acts detailed in preceding paragraphs. *See* Dkt. 32 (Complaint, ¶¶ 26, 28, 29, 33, 34, 35, 36, 38, 42, 43, and 50).  Plaintiffs have provided <u>more</u> than enough information about each predicate act to make BCBSTX aware of the conduct at issue. Additionally, when, as here, "certain information is peculiarly within defendants' knowledge, the courts are more forgiving in applying Rule 9(b), finding that less detail is required in such cases." *Allstate Ins. Co. v. Benhamou See*, 190 F. Supp. 3d 631, 642 (S.D. Tex. 2016).

For instance, predicate acts 2, 4, 7, 8, 9, and 10 (in Complaint, ¶ 51) all reference allegedly inappropriate emails, which violate 18 U.S.C. § 1343 as they constitute "writings in interstate commerce for the purpose of furthering a scheme or artifice to defraud."  BCBSTX's main complaint appears to be that Plaintiffs have not quoted from, nor attached the emails to the Complaint.  However, the communications in question are in the sole possession of BCBSTX and/or its co-conspirators. *See Benhamou*, 190 F. Supp. 3d at 642.  To the extent possible, Plaintiffs have identified the communications by reference to publicly available records in other

---

[8] 1. Wrongfully denying over $65 million in Little River laboratory claims and transmitting those denials electronically to Little River throughout 2016 and 2017; 2. On information and belief, conspiring to wrongfully deny Little River laboratory claims through emails with employees of other insurance companies; 3. Wrongfully recouping more than $10 million paid to Little River; 4. Emailing a presentation to other insurers knowingly and wrongfully accusing Little River and other hospitals of fraud; 5. Improperly refusing to pay and/or recouping an unknown amount of money from other rural hospitals between 2016 and 2021; 6. Presenting a PowerPoint to insurers, law enforcement, and government regulators falsely accusing Little River and other rural hospitals of fraud; 7. Emailing a presentation to other insurers, directing them to target rural hospitals for payment reductions; 8. Emailing other insurers encouraging them to investigate Little River and other hospitals based on false allegations of fraud; 9. Emailing CMS accusing Little River and other hospitals of fraud, despite knowledge of the falsity of the allegations; 10. Emailing the FBI accusing rural hospitals of fraud, despite knowledge of the falsity of the allegations; 11. Providing partial and misleading information to the FBI as part of a campaign to create an investigation of rural hospital billing; and 12. Telling Little River and Plaintiffs that they should be worried about a government investigation as a means of avoiding BCBSTX's obligation to pay for claims.

proceedings,[9] but because the communications themselves were filed under seal, Plaintiffs cannot individually identify them with more specificity.  Even so, Plaintiffs have identified some emails in detail, such as in Paragraph 36: "In the days after its presentation to the HFPP, BCBSTX sent its defamatory presentation to an employee of UnitedHealthcare as 'promised.'"

Plaintiffs also identified numerous emails in furtherance of the scheme from Anthem Healthcare, another alleged member of the Blue Cross Cabal and licensee of the Blue Cross & Blue Shield Association (the "Association"), to the FBI in paragraphs 42-44 of the Complaint.[10] "Once membership in a scheme to defraud is established, a knowing participant is liable for any wire communication which subsequently takes place or which previously took place in connection with the scheme." *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 675 (5th Cir. 2015) (citing *United States v. Stalnaker*, 571 F.3d 428, 436 (5th Cir. 2009)).  Therefore, taking the allegations in the Complaint as true, BCBSTX is also liable for Anthem's communications as predicate acts in violation of 18 U.S.C. § 1343.

With respect to the wrongful transmission of denial to Little River (as identified in bullet points 1, 3, and 5 of ¶ 51 of the Complaint), each wrongfully denied claim was identified (under seal) in the Arbitration, but BCBSTX has refused to produce the transmittals in this litigation (or allow Plaintiffs to use the documents it previously produced in the Arbitration).[11]

---

[9] *See* FNs 28, 29, 30, 40, 41, 42, citing *U.S. v. Perez,* Case No. 3:20-cr-86-TJC-JBT (M.D. Fla.) April 27, 2021 Hearing Transcript; FNs 33, 34, 35, 36, 38, 39, citing *U.S. v. Durall*, 3:20-cr-00086-TJC-JBT (M.D. Fla.); FNs 21, 22, citing Little River Final Award; FNs 23, 26 citing *Studensky v. Blue Cross and Blue Shield of Texas*, Case No. 20-06095, (Bankr. W.D. Tex.), Plaintiff's Amended Complaint, Dkt. 35.

[10] For instance: "Anthem, a member of the Blue Cross Cabal, chose to only give the government spreadsheets containing a subset of information from the billing data, omitting the data disclosing the names of each reference lab." ¶ 42.  "It appears Anthem intentionally conflated the UB-04 billing form utilized by hospitals with the CMS-1500 form used by independent labs. Specifically, after telling the FBI that hospital's claim information came via CMS-1500 forms, Anthem complained about the hospital's use of 'type of bill' 141.  Anthem admitted that 'type of bill' 141 was correct as it put the insurer on notice that the patient in question was 'not a patient of the hospital.'  Even after this admission, Anthem argued to the FBI that the claim was deceptive because it supposedly hid 'where, when, and how the underlying claim was processed'  When specifically asked if there was any 'field in the data' to show which facility actually performed the testing, on information and belief, Anthem failed to report that the billing data contained the names of the reference labs."

[11] The same is true with respect to the $10 million BCBSTX wrongfully recouped from Little River as identified in paragraphs 34, 51, and 96 of the Complaint.

**b.  The Blue Cross Cabal Violated 18 U.S.C. § 1951 (Extortion)**

18 U.S.C. § 1951 applies to extortion and anyone who "attempts or conspires" to extort. "Extortion," in relevant part, is "the obtaining of property from another, with his consent, induced by wrongful use of … fear…"  18 U.S.C. § 1951(b)(2).   Under the statute, "fear of economic loss" is sufficient to trigger liability.  *United States v. Rashad*, 687 F.3d 637, 642 (5th Cir. 2012).

BCSBTX ignores the attempted extortion inherent in pressuring providers to accept new contracts at lower rates—or else permanently forego payment for services already provided—as alleged by Plaintiffs.  Dkt. 32, p. 20 (Complaint, ¶ 46).  This pattern and practice of extortion goes far beyond a "lone supporting allegation," as exemplified by testimony related to BCBSTX's accusations of fraud against rural hospitals from Texas Senator Charles Perry: "there's been used **a veiled threat that if you don't acquiesce and renegotiate under unfavorable terms** … there's a process that we're not just going to pay anything."  Dkt. 32, p. 21 (Complaint, Par. 49).  Plaintiffs' allegation that BCBSTX refused to pay Little River and other rural hospitals amounts due to them unless they negotiated new contracts at unfavorable rates falls squarely within the definition of extortion based on fear of economic loss.

Plaintiffs also allege that that BCBSTX "threaten[ed] government action if [Plaintiffs] refused BCBSTX's demands."  Dkt. 32, p. 22 (Complaint, ¶ 51).  BCBSTX claims, without any citation or reference, that "this does not constitute extortion."   Dkt. 35, p. 29 (Motion to Dismiss, p. 21).   Yet BCBSTX attempted to convince Plaintiffs to give up its "property" (claims against BCBSTX) in exchange for BCBSTX foregoing its pressure campaign seeking government action against Little River.  Plaintiffs justifiably feared economic loss resulting from any government investigation or prosecution, even a baseless one spurred on by BCBSTX.

BCBSTX's argues that its threats are not actionable because, allegedly, "BCBSTX is not in a position to threaten government action" (Motion to Dismiss, p. 21), but this defense ignores the close relationship between BCBSTX and the FBI, including the allegation that Blue Cross Cabal is "inextricably intertwined with the government" in investigating rural hospitals, as referenced in Paragraph 38 of the Complaint:

"BCBSTX created a strategy of inappropriately using regulators as leverage against hospitals in payment negotiations. BCBSTX also reported hospitals to the federal government as committing fraud to create leverage in negotiations over new contracts and money owed for past services and communicated its strategy to other members of the Blue Cross Cabal. In fact, based on attorneys' statements in court, 'Blue Cross Blue Shield had participated in interviews, participated in the production of information, was intimately involve, the best we can tell, in all aspects of this case with the government. They have former FBI agents working in their – they call them the SIUs, the special investigation units … they're inextricably intertwined with the government in this investigation.'"

BCBSTX also ignores well-pled allegations that BCBSTX extorted (and attempted to extort) other rural hospitals: "BCBSTX also attempted to extort Plaintiffs, Little River and, on information and belief, other rural hospitals, into settling claims by threatening government action if they refused BCBSTX's demands."  In fact, BCBSTX trained its personnel to improperly use government regulators as leverage against rural hospitals in contract negotiations "to force them to reduce services and accept lower reimbursement rates" in violation of 18 U.S.C. § 1951.  Dkt. 32, p. 8 (Complaint, ¶ 21).[12]

### 2.  Plaintiffs Pled a Rico Enterprise

"A RICO enterprise can be either a legal entity or an association-in-fact." *Benhamou*, 190 F.Supp. 3d at 648.  An association-in-fact enterprise requires "at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit [the] associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009).  "The U.S. Supreme Court has specifically held that the concept of an association-in-fact enterprise is 'expansive' and that the definition of enterprise in the RICO statute is meant to have a 'wide reach.'" *Harris Cnty. v. Eli Lilly & Co.*, CIVIL ACTION H-19-4994 (S.D. Tex. Sep. 29, 2020) at *15 (citing *Boyle*, 556 U.S. at 944).  "At the motion to dismiss stage, however, it is enough that a plaintiff state what entities it believes constitute an enterprise — a plaintiff does not have to allege the *Turkette* elements to prove that an enterprise actually exits." *HT of Highlands*

---

[12] *See also* Complaint, ¶ 22 ("In bad faith and/or with malice, BCBSTX reported at least Little River and, on information and belief, other providers for fraud as part of its inappropriate pressure tactics seeking to avoid its higher reimbursement payment obligations to hospital facilities. Most hospitals cave to BCBSTX's inappropriate pressure tactics and agree to stop providing lawful services (because BCBSTX does not want to pay for them) and to sign lower contracts—even contracts that reimburse less than a hospital's cost of treating patients.").

*Ranch, Inc. v. Hollywood Tanning Systems, Inc.*, 590 F. Supp. 2d 677, 689 (D.N.J. 2008) (citing *United States v. Turkette*, 452 U.S. 576, 583 (1981)).

Plaintiffs plead that the enterprise, named the Blue Cross Cabal (an "association in fact"), consists of BCBSTX, the Association, Association licensees (such as BCBSTX and Anthem), and other insurance companies.  Dkt. 32, p. 14 (Complaint, ¶ 37).  This allegation is more than sufficient to withstand a motion to dismiss.  Even so, Plaintiffs went even further and identified the *Turkette* elements.  The "purpose" of the Blue Cross Cabal is "reduce payments to rural hospitals."  *Id*.  The ties between the various insurance companies that make up the RICO enterprise extend far beyond the enterprise itself as BCBSTX, Anthem, and the Association have interconnected contracts regarding use of the Blue Cross name and sharing of provider networks. Dkt. 32, pp. 14, 20 (Complaint, at ¶¶ 37, 46).  Other, non-Blue Cross insurers, such as United, also have a "relationship" to the Blue Cross Cabal because they are members of the Healthcare Fraud Prevention Partnership ("HFPP") and attend meetings discussing means by which to reduce payments to rural hospitals.  Dkt. 32, pp. 13, 24 (Complaint, ¶¶ 35-36, 56).  This situation mirrors the facts set forth in *Harris County* (denying motion to dismiss based on failure to plead enterprise) when some members of the enterprise had "contractual relationships" with each other, while others were members of an organization that held "several conferences each year" allowing them to build "longstanding relationships."  *Harris County*, at *20.  Plaintiffs have pled "ongoing business relationships between the defendants indicate an association beyond the predicate acts of which the defendants are accused" and alleged an enterprise sufficient to defeat BCSBTX's motion to dismiss.[13]  *Harris County*, at *20; *See also Grider v. Keystone Health Plan Central, Inc.*, Civil Action No. 2001-CV-05641 (E.D. Pa. Sep. 18, 2003) (motion to dismiss denied with an enterprise of two Blue Cross & Blue Shield plans, their executives, and other non-parties).

### 3.  Plaintiffs Pled Proximate Causation of Damages

"Proximate   causation   under   RICO   is   evaluated   in   light   of   its   common-law

---

[13] In contrast, the one case cited by BCBSTX in support of its argument that Plaintiffs failed to allege an enterprise did not include any factual allegations of association, merely stating, "Clark, the Trust, CPLI, Liedtke, BBC, and others, known and unknown, associated themselves in fact,."  *Brunig v. Clark*, 560 F.3d 292, 297 (5th Cir. 2009).

foundations." *Benhamou*, 190 F. Supp. 3d at 631 (citing *Hemi Group, LLC v. City of New York* , 559 U.S. 1 (2010)).   "RICO plaintiffs must prove that there is a 'sufficiently direct relationship between the defendants' wrongful conduct and the plaintiff's injury' to satisfy the requirements of the proximate cause analysis.  But '[p]roximate cause . . . is a flexible concept that does not lend itself to a black letter rule that will dictate the result in every case.'" *Harris County,* at *21 (quoting *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 657-58 (2008)).   "The Fifth Circuit has generally found RICO causation present where the injury was 'either a direct result or a reasonably probable consequence' of the defendant's conduct." *Earl v. The Boeing Co*., Civil Action 4:19-cv-507 (E.D. Tex. Sep. 3, 2021) quoting *Plambeck*, 802 at 676  (approving jury instruction "stating that proximate cause was present if 'the injury or damage was either a direct result or a reasonably probable consequence of the act.'").

Here, Plaintiffs have alleged a direct chain of causation between BCBSTX's actions and damage to Plaintiffs: (1) BCBSTX wrongfully withheld $67 million from Little River; (2) without the $67 million, (a) Little River could not pay Plaintiffs' salaries and (b) Little River's accrual-based financial statements appeared grossly overstated, preventing preparation of audited financial statements; (3) without auditable financial statements, Plaintiffs could not sell their shares in Little River as part of a planned recapitalization.  Each step in the chain of causation was not merely a "reasonably probably consequence," which would itself be sufficient for proximate causation, but a necessary result.  *Plambeck*, 802 F.3d at 676.  Put another way, given BCBSTX's wrongful withholding of $67 million, there was no possible way for Plaintiffs to have proceeded with a recapitalization because they could not get audited financial statements.

In contrast, the *Hemi* case, cited by BCBSTX, involved damages allegedly caused by a "fourth-party" two steps removed from the RICO enterprise.  *Hemi*, 559 U.S. at 11.  In *Hemi*, certain persons failed to pay taxes to the City of New York (the "City").  The City attempted to recover such taxes under a RICO theory – but did not allege a RICO enterprise that included the taxpayers.  *Id.*, at 5.  Rather, the City argued the following chain of causation: (1) the RICO Enterprise deprived the State of New York of information regarding nonpayment of taxes; (2) the

State could have given that information to the City; (3) if the State provided the information, the City might have been able to identify persons who failed to pay City taxes; (4) if the City had identified the taxpayers, the City might have collected the taxes. *Id.*, at 9. The Supreme Court ruled that the RICO enterprise could not be the proximate cause of the City's alleged damage because "the conduct directly responsible for the City's harm was the customers' failure to pay their taxes"—an event entirely outside of and even pre-dating the alleged RICO acts. *Id.*, at 10. In contrast, the chain of causation in the present case is simple and straight-forward. Because of the wrongful acts of BCBSTX and its co-conspirators,[14] Little River and Plaintiffs' reputations were damaged and Little River was denied access to $67 million owed by BCBSTX, making it "reasonably probable" that Little River would be unable to continue paying Plaintiffs' salaries and Plaintiffs would be unable to sell their equity interest in Little River. Plaintiffs have alleged both "but for" and proximately caused damages under Fifth Circuit precedent.

### E.    Plaintiffs Adequately Pled Antitrust Claims

Plaintiffs have alleged an agreement between BCBSTX, Anthem, and other insurers to fix prices for payment to rural hospitals. *See* Dkt. 32, p. 21 (Complaint, ¶ 50) ("BCBSTX's communications indicate an ongoing conspiracy by the Blue Cross Cabal to wrongfully deny claims and fix prices for hospital services."). Agreements among competitors "at the same level of distribution" are a form of "horizontal price fixing." "These are generally considered facially unreasonable and are therefore illegal *per se*." *Vaughn Medical Equip. Rep. Svc. v. Jordan Reses Supply*, CIVIL ACTION No. 10-00124, SECTION: "C" (4) at *2 (E.D. La. Aug. 24, 2010) (citing *Catalano, Inc. v. Target Sales, Inc.,* 446 U.S. 643, 647 (1980) and *Muenster Butane, Inc. v. Stewart Co.,* 651 F.2d 292, 295 (5th Cir. 1981)). "To plead a claim of horizontal price-fixing, the plaintiff

---

[14] BCBSTX argues actions by Anthem are not properly part of this lawsuit because Anthem is not a party. Motion to Dismiss at p. 24. However, Anthem is not a "fourth party" as in *Hemi*, or even a third-party — Plaintiffs have alleged that Anthem is a member of the Blue Cross Cabal. *See* Complaint, ¶ 42 ("Anthem, one member of the Blue Cross Cabal…"). All members of a RICO Enterprise are jointly and severally liable for actions taken by other members in furtherance of the Enterprise. *Plambeck*, 802 F.3d at 675; *Malvino v. Delluniversita*, CIVIL ACTION No. 2:12-CV-401 at * 26(S.D. Tex. May 20, 2015) (citing *Fleischhauer v. Feltner*, 879 F.2d 1290, 1301 (6th Cir. 1989) and *United States v. Philip Morris USA*, 316 F. Supp. 2d 19, 27 (D.D.C. 2004)). Actions taken collectively by BCBSTX, the BCBSA Association, Anthem, and other members of the Blue Cross Cabal in furtherance of the scheme against rural hospitals are actionable against BCBSTX.

must allege facts to show the existence of an agreement or conspiracy among actual competitors, with the purpose or effect of depressing, fixing, or stabilizing the price of a commodity in interstate commerce." *Id.*, citing *United States v. Socony-Vacuum Oil Co.,* 310 U.S. 150, 216-19 (1940).  A plaintiff does not have to show a "direct agreement on the actual prices to be maintained."  *Palmer v. BRG of Georgia*, Inc., 498 U.S. 46, 48 (1990).  In a horizontal price fixing case, "plaintiff's factual allegations create an inference that the defendants' activities were *per se* unlawful, [and] the requirement to plead a relevant market is lifted, as the anticompetitive effects of defendants' activities are considered facially apparent."  *Vaughn,* at *2 (citing *Doctor's Hosp. of Jefferson, Inc. v. Southeast Med. Alliance, Inc.,* 123 F.3d 301, 307 (5th Cir. 1997)).[15]

Plaintiffs pled that BCBSTX gave a presentation to other major health insurers directing them to reduce payments to rural hospitals and other insurers followed BCBSTX's advice, resulting in depressed wages for the rural hospital labor market.  Dkt. 32, p. 13 (Complaint ¶35) ("BCBSTX made a presentation to other third-party payors, including, but not limited to, Aetna, Cigna, Humana, and United, accusing Little River of fraud and directing the other insurers to target Little River and other rural hospitals for contractual rate reductions.").  BCBSTX seeks to impose a "plausible inference" that the "insurance payors … took a series of independent actions."  Dkt. 35, p. 35 (Motion to Dismiss, p. 27).  But in a motion to dismiss, BCBSTX is not entitled to any such inference.  Rather, Plaintiffs' allegation–that other insurers acted on BCBSTX's advice in reducing payment to rural hospitals.  Plaintiffs have specifically identified a written presentation by BCBSTX calling on other insurers to fix prices paid to rural hospitals.  Only discovery in this case will reveal the full extent of other communications between insurers concerning rural hospital contracts and payment rates, but Plaintiffs have already "sketch[ed] the outline of the antitrust violation with allegations of supporting factual detail" such that the motion to dismiss must be

---

[15] BCBSTX argues that Plaintiffs' Complaint "lacks allegations of any relevant market"  (Motion to Dismiss, p. 28), but because Plaintiffs' claims involve horizontal price fixing, not monopolization, "a 'relevant market' in an antitrust monopolization sense need not be shown."  *In re S. Cent. States Bakery Prods. Antitrust Litig.*, 86 F.R.D. 407, 411 (M.D. La. 1980). Plaintiffs factual allegations here are sufficient to allege horizontal price fixing and none of the case cited by BCBSTX address this type of claim (*PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 15 F.3d 412, 418–19 (5th Cir. 2010); *Shah v. VHS San Antonio Parts., L.L.C.*, 985 F.3d 450, 454 (5th Cir. 2021); *Apani Sw., Inc. v. Coca-Cola Enters., Inc.*, 300 F.3d 620, 632-33 (5th Cir. 2002)).

denied.  *In re Mem'l Hermann*, 464 at 709.

> **F.   Plaintiffs Allegations State a Claim For Intentional Infliction of Emotional Distress**

BCBSTX seeks to dismiss Plaintiffs' claims for intentional infliction of emotional distress because "the gravamen of the Complaint is entirely other torts, including defamation, business disparagement, and others."  *Id.*, at p. 38 (Motion to Dismiss, p. 29-30).  As BCBSTX notes, intentional infliction of emotional distress is a "gap filler" tort designed to apply when no other cause of action is available to a plaintiff for damage caused by a defendant.  *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816, 818 (Tex. 2005).

In this case, Plaintiffs agree they cannot recover for intentional infliction of emotional distress in addition to violations of the Lanham Act, defamation, business disparagement, RICO, and anti-trust.  However, in the unlikely event Plaintiffs are precluded from pursuing the other causes of action, intentional infliction of emotional distress would remain as an appropriate "gap filler" to address BCBSTX's extreme and outrageous conduct.  *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004) (intentional infliction of emotional distress is available "in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress").  BCBSTX has presented no authority suggesting Plaintiffs must choose between causes of action at this stage in the proceeding when BCBSTX is attempting to dismiss all causes of action.

Further, Plaintiffs' allegations of BCBSTX's "extreme and outrageous conduct" are not conclusory (as argued by BCBSTX).  Dkt. 35, p. 38 (Motion to Dismiss, p. 30).  Rather, Plaintiffs have alleged BCBSTX: (1) directed people to lie to physicians to take business away from Little River; (2) wrongly accused Little River of fraud in communications to other insurance companies; and (3) wrongly accused Little River of fraud in communications with government officials—all for the purpose of destroying Plaintiffs' reputation and business, which resulted in Plaintiffs' justifiable fear of wrongful criminal prosecution.  Dkt. 32, pp. 9, 13 (Complaint, ¶¶ 24, 35).  Plaintiffs have more than met their burden to defeat BCBSTX's motion to dismiss their intentional

infliction of emotional distress claims. *See Walker v. South Cent. Bell Tel. Co.*, 904 F.2d 275 (5th Cir. 1990) (reversing dismissal of intentional infliction of emotional distress claim, even though plaintiff "failed to plead any facts which were relevant to an element of the tort—i.e. outrageous conduct" because, when possible, a court should infer missing elements from the remainder of the Complaint).

        **G.     Plaintiffs Allegations State a Claim For Exemplary Damages**

As noted by BCBSTX, Plaintiffs' request for exemplary damages is predicated on prevailing on one of its other claims. As those claims should survive the motion to dismiss, so should Plaintiffs' claim for exemplary damages.

**IV.   Plaintiffs Have Pled the Discovery Rule, Therefore No Statute of Limitations Applies**

BCBSTX's final argument for dismissal is based on statutes of limitations. Plaintiffs pled they had no awareness of BCBSTX's false statements and such statements were not public knowledge until "Little River filed the Final Award from the Arbitration in open court on May 6, 2020." Dkt. 32, pp. 29-32 (Complaint, ¶¶ 75, 82, 88). As a result, the statutes of limitations for all claims were tolled until May 6, 2020. This case was filed less than one year after May 6, 2020, so no statutes of limitations are implicated on any of Plaintiffs' claims.

**CONCLUSION**

As Plaintiffs have standing and properly pled factual allegations supporting all claims, BCBSTX's motion to be dismiss should be denied. Alternatively, to the extent the Court concludes Plaintiffs' Complaint is lacking, Plaintiffs seek leave to amend to address any deficiency.

                                        Respectfully submitted,

                                        /s/ Ryan Downton
                                        Ryan Downton
                                        LAW OFFICES OF RYAN DOWNTON
                                        Texas Bar No. 24036500
                                        193 Dorado Beach East
                                        Dorado, PR 00646*
                                        Phone: 512-680-7947

Ryan@TheTexasTrialGroup.com
*Ryan Downton is licensed in Texas, not Puerto
Rico

**Attorneys for Plaintiffs**

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 21, 2021, I caused a true and correct

copy of the foregoing document to be filed electronically. Notice of this filing will be sent by

operation of the Court's electronic filing system to all counsel of record.

By: /s/ Ryan Downton